Davida Brook (CA SBN 275370)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
dbrook@susmangodfrey.com
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Vineet Bhatia (TX SBN 00795976)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002
vbhatia@susmangodfrey.com
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Attorneys for Plaintiff Greg Blatt

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG BLATT,<br><br>                          Plaintiff,<br><br>     v.<br><br>ROSETTE PAMBAKIAN and SEAN RAD;<br><br>                          Defendants. | Case No. 2:19-cv-07046<br><br>**COMPLAINT** |

Plaintiff Greg Blatt ("Blatt" or "Plaintiff"), by his attorneys, Susman Godfrey L.L.P., for his Complaint against defendants Rosette Pambakian ("Pambakian") and Sean Rad ("Rad") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for defamation and defamation per se. As part of their scheme to extract billions of dollars from IAC/InterActiveCorp ("IAC") and Match Group, Inc. ("Match"), Pambakian and Rad have conspired to make false allegations of sexual harassment and sexual assault against Blatt with the specific intent to damage Blatt's good name, reputation, and credibility. The scheme to damage Blatt's reputation and credibility arises out of Rad's hatred of Blatt, who he blamed for losing his job at Tinder, and Rad's desire to maximize the value of his Tinder options.

2. Pambakian and Rad are former executives at Tinder, Inc. ("Tinder"). Tinder, which has been merged into Match, is a controlled subsidiary of IAC. Blatt was CEO of IAC, Match and Tinder at various times. Both Pambakian and Rad (along with several other current and former Tinder executives) have filed a separate lawsuit in New York claiming that IAC and Match, in large part through the actions of Blatt, failed to properly value their Tinder stock options. The Tinder executives in the suit claim that they would be entitled to be paid an additional $2 billion if the Tinder options were properly valued. In the lawsuit, based on the relative size of their Tinder options, Rad personally claimed that he was entitled to over $1 billion; Pambakian claimed that she was entitled to millions. Blatt is expected to be a key witness for IAC and Match in the valuation dispute.

## THE PARTIES

3. Plaintiff Gregory Blatt is a citizen of the State of Colorado. Prior to December 2017, Blatt was the CEO and Chairman of Match Group and the CEO and Executive Chairman of Tinder.

4. Defendant Rosette Pambakian is a citizen of the State of California. Pambakian was the Vice-President of Global Communications and Brand and Head of Marketing and Communications at Tinder.

5. Defendant Sean Rad is a citizen of the State of California. At various times from approximately February 2012 to December 2016, Rad was the CEO of Tinder.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action between citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in the Central District of California, Southern Division because all the Defendants are California residents who reside in the Central District of California and a substantial part of the events that give rise to the claim occurred in the Central District of California.

## FACTUAL ALLEGATIONS

8. On August 14, 2018, at Rad's urging, Pambakian joined a lawsuit against Match over the valuation of Tinder's options. The lawsuit included allegations that Blatt sexually harassed and groped Pambakian, even though such claims were false and had no relevance to the claim that Tinder had been undervalued. Instead, it was an attempt to gain publicity for what would otherwise be a run-of-the-mill valuation dispute, to apply pressure to settle the lawsuit in an era where most companies would be afraid to challenge assertions of sexual misconduct, and to tar the character of the person who would likely be the central witness on behalf of the defendants in the lawsuit: Blatt.

9. Rad and Pambakian shared the same lawyer, and over a span of two days Rad, Pambakian and the lawyer conducted a series of coordinated interviews on CNN to promote the lawsuit, in which Blatt was defamed in multiple ways. Rad, who had by far the largest option stake of any Tinder employee, orchestrated and directed the

media strategy and was the primary beneficiary of the coordinated legal and public relations campaign.

10. Rad made the initial defamatory statements in a CNN interview. In that interview, which aired on August 14, 2018, Rad falsely stated that Blatt had engaged in sexual harassment. Rad also falsely accused Blatt of threatening him with retaliation over Rad's reporting the incident at the holiday party to Match's general counsel. The CNN interview was widely viewed, and other news outlets published Rad's defamatory statements.

11. Following the CNN interview, Pambakian made defamatory statements about Blatt in an article published by CNN on August 16, 2018. In that article, Pambakian falsely accused Blatt of sexual harassment. Pambakian falsely stated that Blatt created an atmosphere of fear for her at the holiday party, causing her to flee to an upstairs hotel room. Pambakian falsely stated that Blatt improperly and without her knowledge followed her to the hotel room. Pambakian falsely stated that Blatt engaged in sexual activity with her without her consent and forcibly pushed her down on the bed and climbed on top of her. Pambakian falsely stated that the reason she was coming forward at this time with her story was because of rumors at the company and interested reporters. The article was widely read, and other news outlets published Pambakian's defamatory statements.

12. On December 18, 2018, in another news article published by the Verge, Pambakian defamed Blatt by accusing him of sexual assault. In connection with that article, Pambakian and Rad, as part of their coordinated media strategy, circulated two emails accusing Blatt of sexual assault to multiple media and news organizations. Pambakian's false and defamatory accusation of sexual assault received significant media attention and was widely read.

13. As a result of Defendants' defamatory conduct, Blatt has suffered damages in the form of harm to his professional and personal reputation. Blatt has also suffered damages of the type that are a fair and natural consequence of the

Defendants' tortious conduct, including humiliation, embarrassment, and ostracism, and the deprivation of social relationships.

## FIRST CAUSE OF ACTION

### (Defamation Against Pambakian & Rad)

14. Blatt repeats and incorporates the allegations set forth in Paragraph 1 through 13 as though fully set forth herein.

15. Rad and Pambakian either directly or through agents, proxies and co-conspirators, have caused to be published numerous defamatory statements of fact about Blatt. Defendants' defamatory statements include false statements that Blatt among other things:

   a. Sexually harassed Pambakian;
   b. Sexually assaulted Pambakian;
   c. Kissed and groped Pambakian without her consent;
   d. Created an atmosphere of fear for her at the holiday party, causing Pambakian to flee to an upstairs hotel room;
   e. Followed Pambakian to the hotel room without her knowledge and consent;
   f. Pushed Pambakian down on the bed and climbed on top of her and in so doing had engaged in improper sexual misconduct; and
   g. Threatened Rad with retribution for reporting the false claim of sexual harassment to the Match board.

16. The statements are false and defamatory because they tend to expose Blatt to public contempt, hatred, ridicule, aversion or disgrace.

17. The Defendants, either directly or through agents, proxies, and co-conspirators, have assisted in the publication of additional defamatory statements and continue to do so.

18. Every statement about Blatt described above is categorically false and untrue.

19. The Defendants, either directly or through agents, proxies, and co-conspirators, published these false statements to multiple third persons in California and across the world on television, in newspapers, on the radio, and through the Internet.

20. The audience for these false statements of fact reasonably understood them to be about Blatt because each statement specifically names Blatt or taken as a whole clearly identifies Blatt.

21. Defendants' publication of these false and defamatory statements concerning Blatt was not privileged.

22. Defendants published these false and defamatory statements concerning Blatt, or caused them to be published, without justification.

23. The Defendants acted with actual malice in making the statements. At the time the statements were made, Defendants knew they were false or acted with reckless disregard for truth or falsity.

24. The Defendants also acted with common law malice in making the statements. Defendants harbor spite, ill will and animus toward Blatt, and the Defendants have evil and sinister motivations in causing the publication of the statements above.

25. Because the Defendants acted with malice in making their statements about Blatt, this Court should award punitive damages.

## SECOND CAUSE OF ACTION

**(Defamation Per Se Against Pambakian & Rad)**

26. Blatt repeats and incorporates the allegations set forth in Paragraphs 1 through 25 as though fully set forth herein.

27. The Defendants, either directly or through agents, proxies and co-conspirators, have caused to be published numerous defamatory statements of fact about Blatt. Defendants' statements include, that Blatt, among other crimes:

    a. Sexually assaulted Pambakian;

6777941v1/016409

  b. Kissed and groped Pambakian without her consent;

  c. Pushed Pambakian down on the bed and climbed on top of her and in so doing had engaged in improper sexual misconduct;

  d. Threatened Rad with retribution for reporting the false claim of sexual harassment to the Match board.

28. The statements are per se defamatory because they accuse Blatt of serious criminal wrongdoing.

29. These statements are libelous per se because their defamatory content appears on their face and they tend to expose Blatt to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.

30. The Defendants, either directly or through agents, proxies, and co-conspirators, assisted in the publication of additional defamatory statements and continue to do so.

31. Every statement about Blatt described above is categorically false and untrue.

32. The Defendants, either directly or through agents, proxies, and co-conspirators, published these false statements to multiple third persons in California and across the world on television, in newspapers, on the radio, and through the Internet.

33. The audience for these false statements of fact reasonably understood them to be about Blatt because each statement specifically names Blatt or taken as a whole clearly identifies Blatt.

34. Defendants' publication of these false and defamatory statements concerning Blatt was not privileged.

35. Defendants published these false and defamatory statements concerning Blatt, or caused them to be published, without justification.

36. The Defendants acted with actual malice in making the statements. At the time the statements were made, Defendants knew they were false or acted with reckless disregard for truth or falsity.

37. The Defendants also acted with common law malice in making the statements. Defendants harbor spite, ill will, and animus towards Blatt, and the Defendants had evil and sinister motivations in causing the publication of the statements above.

38. Because the statements are defamatory per se, Blatt is presumed to have been injured by their utterance. Defendants' tortious conduct has also caused Blatt to suffer special damages in an amount in excess of $1 million, including, but not limited to, attorneys' fees and other related professional consulting fees to investigate, monitor, and mitigate the effects of the defamatory statements.

39. As a result of Defendants' defamatory conduct, Blatt has also suffered damages in the form of harm to his professional and personal reputations, damages of the type that are a fair and natural consequence of the Defendants' tortious conduct; specifically, humiliation, embarrassment, and ostracism, and the deprivation of social relationships.

40. Because the Defendants acted with malice in making their statements about Blatt, this Court should award punitive damages.

### THIRD CAUSE OF ACTION
**(Civil Conspiracy Against Pambakian & Rad)**

41. Blatt repeats and incorporates the allegations set forth in Paragraphs 1 through 40 as though fully set forth herein.

42. The Defendants, either directly or through agents, proxies, and co-conspirators, each committed the torts of defamation and defamation per se.

43. The Defendants each knowingly and intentionally combined, conspired, and agreed together and with others to engage in this course of conduct.

44. The Defendants have taken numerous acts in furtherance of their corrupt agreement, including engaging in a coordinated media strategy to damage Blatt's reputation and credibility to further their goal of extracting billions of dollars of additional compensation as part of the Tinder valuation dispute.

45. Numerous tortious activities occurred within the State of California in furtherance of the conspiracy.

46. Defendants are actively engaged in an unlawful conspiracy to defame Blatt thus entitling Blatt to monetary and punitive damages.

## **PRAYER FOR RELIEF**

47. Blatt requests entry of judgment in his favor and against Defendants as follows:

   a. Awarding Blatt money damages in accordance with the evidence, together with interest thereon, to compensate Blatt for Defendants' tortious conduct, including for damage to Mr. Blatt's personal and professional reputations, in an amount not less than $50 million;

   b. Awarding Blatt punitive damages sufficient to punish and deter the conduct complained of herein in an amount not less than $50 million;

   c. Awarding Mr. Blatt attorneys' fees and costs of suit herein;

   d. Granting such other and further relief as the Court may deem just and proper.

| | | |
|---|---|---|
| 1 | Dated: August 13, 2019 | By: /s/ *Davida Brook* |
| 2 | | Davida Brook |
| | | **SUSMAN GODFREY L.L.P.** |
| 3 | | 1900 Avenue of the Stars, 14th Floor |
| | | Los Angeles, CA 90067 |
| 4 | | dbrook@susmangodfrey.com |
| | | Telephone: (310) 789-3100 |
| 5 | | Facsimile: (310) 789-3150 |
| 6 | | Vineet Bhatia |
| | | **SUSMAN GODFREY L.L.P.** |
| 7 | | 1000 Louisiana, Suite 5100 |
| | | Houston, TX 77002 |
| 8 | | vbhatia@susmangodfrey.com |
| | | Telephone: (713) 651-9366 |
| | | Facsimile: (713) 654-6666 |

9

COMPLAINT

6777941v1/016409