DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
SUSMAN GODFREY LLP
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

VINEET BHATIA (*Pro Hac Vice*)
vbhatia@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Attorneys for Plaintiff GREGORY BLATT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREGORY BLATT,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ROSETTE PAMBAKIAN and SEAN RAD; and DOES 1 – 10, inclusive,<br><br>　　　　Defendants. | Case No. 2:19-cv-07046-MWF-FFM(x)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Judge: Hon. Michael W. Fitzgerald<br>Ctrm.: 5A<br>Date: November 4, 2019<br>Time: 10:00 a.m. |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................2

    A. Pambakian and Rad Defame Blatt ................................................................2

    B. The Parties' Mutual Agreement to Arbitrate ................................................3

    C. Pambakian's Claims Against the Match Defendants Are Subject to Arbitration .................................................................................................5

    D. Blatt's Defamation Action ............................................................................5

III. ARGUMENT ........................................................................................................6

    A. The Court Should Order Arbitration of Blatt's Claims ................................6

        1. Blatt and Pambakian Are Parties to a Valid Agreement to Arbitrate Blatt's Claims ....................................................................7

        2. Blatt Is Entitled to Enforce the Agreement ............................................10

    B. The Court Should Stay Blatt's Litigation Against Pambakian ...................11

IV. CONCLUSION ..................................................................................................11

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) .................................................................................................. 6

*AT&T Techs. Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) ............................................................................................. 7, 8

*Balan v. Tesla Motors, Inc.*,
 2019 WL 2635903 (W.D. Wash. June 27, 2019) ....................................................... 8

*Britton v. Co-op Banking Grp.*,
 4 F.3d 742 (9th Cir. 1993) ......................................................................................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2014 WL 7206620 (N.D. Cal. Dec. 18, 2014) ........................................................... 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ................................................................................... 8

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985) .................................................................................................. 6

*Garcia de Alba v. Brinker Int'l, Inc.*,
 No. 16-cv-3486-FMO, 2017 WL 10543656 (C.D. Cal. June 30, 2017) .................... 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S.Ct. 524 (2019) ................................................................................................. 9

*Letizia v. Prudential Bache Sec., Inc.*,
 802 F.2d 1185 (9th Cir. 1986) ................................................................................. 10

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
 363 F.3d 1010 (9th Cir. 2004) ................................................................................... 6

*Mortensen v. Bresnan Commc'ns, LLC*,
 722 F.3d 1151 (9th Cir. 2013) ................................................................................... 6

*Murphy v. DirecTV, Inc.*,
 724 F.3d 1218 (9th Cir. 2013) ................................................................................. 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
 724 F.3d 1069 (9th Cir. 2013) ................................................................................... 9

*Pambakian v. Blatt,*
    2:19-cv-07053-MWF-FFM (C.D. Cal.) ............................................................... *passim*

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) ................................................................................................. 8

*Sanfilippo v. Tinder, Inc.,*
    2018 WL 6681197 (C.D. Cal. Dec. 18, 2018) ......................................................... 9

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) ............................................................................... 6, 8

*Zolezzi v. Dean Witter Reynolds, Inc.,*
    789 F.2d 1447 (9th Cir. 1986) ................................................................................ 8

**State Cases**

*Jensen v. U-Haul Co. of Cal.,*
    18 Cal. App. 5th 295 (2017) ................................................................................. 10

*Ronay Family Ltd. P'ship v. Tweed,*
    216 Cal. App. 4th 830 (2013) ......................................................................... 10, 11

**Federal Statutes**

9 U.S.C. § 2 ..................................................................................................................... 6

9 U.S.C. § 3 ................................................................................................................... 11

Federal Arbitration Act................................................................................................... 1

**State Statutes**

Cal. Civ. Code § 1559 .................................................................................................. 10

**Other Authorities**

The Verge (as updated Sept. 4, 2018), *available at*
    https://www.theverge.com/2018/8/31/17805622/tinder-match-group-iac-
    lawsuit-plaintiffs-withdraw..................................................................................... 5

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this action, Gregory Blatt, the former CEO of Match Group, Inc. ("Match") and its corporate parent, IAC/InterActiveCorp ("IAC"), brings defamation and civil conspiracy claims against former Match employee Rosette Pambakian for false statements she made about Blatt's alleged behavior at a company-sponsored holiday party. This case is related to Pambakian's action against Blatt, where she alleges several employment-related claims against Blatt, Match, and IAC (collectively, the "Match Defendants"). *See Pambakian v. Blatt,* 2:19-cv-07053-MWF-FFM (C.D. Cal.) ("*Pambakian*"). In that related action, the Match Defendants moved to compel arbitration of Pambakian's claims, arguing that they are subject to the parties' valid and enforceable arbitration agreement. *Id.*, Docket No. 30. For similar reasons, Blatt's claims against Pambakian should be resolved in arbitration as well.

Pambakian signed a clear and explicit agreement to arbitrate all claims "involving or in any way concerning [her] . . . employment with the Company." Match Group, Inc. Alternative Dispute Resolution Program for California (the "ADR Program"), ¶ 2, attached as Exhibit 1 to the Declaration of Davida Brook ("Brook Decl."), at 30-34; Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Alternative Dispute Program for California (the "Agreement"), ¶ 5, Brook Decl. Ex. 1, at 27-28 (incorporating the ADR program by reference); *see also* Agreement ¶ 1 (agreeing to arbitrate all claims "arising out of or in connection with [her] application with, employment with, or termination from, the Company"). Blatt's claims against Pambakian—which relate to Pambakian's statements about her workplace supervisor's alleged behavior at a company-sponsored party—plainly "involve" and "concern" Pambakian's employment, and thus are covered by the Agreement.

The parties further agreed that the Federal Arbitration Act ("FAA") would govern interpretation and enforcement of their arbitration contract. ADR Program

1

¶ 4.1; Agreement ¶ 2. The FAA, in turn, declares a liberal policy favoring the enforcement of arbitration agreements and requires courts to compel arbitration of claims that parties have agreed to arbitrate. The parties' agreement to arbitrate is valid and enforceable, and Blatt's claims must be resolved in arbitration.

## II.   BACKGROUND

### A.   Pambakian and Rad Defame Blatt

Defendants Pambakian and Sean Rad are former executives at Tinder, Inc. First Amended Complaint ("FAC") ¶ 2. Pambakian served as Tinder's Vice-President of Global Communications and its Brand and Head of Marketing and Communications. *Id.* ¶ 21. Rad was Tinder's CEO from approximately February 2012 to December 2016.[1] *Id.* ¶ 22. Plaintiff Blatt has served as CEO of IAC, Match, and Tinder at various times up until December 2017. *Id.* ¶ 20. In July 2017, Tinder, Inc. merged into Match, at which point Pambakian and Blatt became employees of Match. *Id.* ¶ 2.

On August 14, 2018, Pambakian, at the urging of Rad, joined a lawsuit with other former Tinder executives in New York state court regarding the valuation of Tinder's options. FAC ¶¶ 14, 66. In that suit, the Tinder executives, including Pambakian and Rad, claimed they would be entitled to an additional $2 billion if their Tinder options were properly valued. *Id* ¶ 2. The complaint in the New York action also included allegations that Blatt sexually harassed and groped Pambakian at a Tinder-sponsored holiday party, which took place at a hotel in Los Angeles. *Id.* ¶ 14. Not only were those claims irrelevant to the claim that Tinder had been undervalued, they were patently false. *Id.*

Rad and Pambakian conducted a coordinated media strategy in which they spread those false allegations against Blatt and promoted their lawsuit. FAC ¶ 14.

---

[1] This motion to compel arbitration is directed solely at Defendant Pambakian. Defendant Rad is not a party to the arbitration agreement.

In an interview that aired on CNN on August 14, 2018, Rad falsely stated that Blatt had sexually harassed Pambakian, and he falsely accused Blatt of threatening him with retaliation. *Id*. ¶¶ 94-96. Following that interview, Pambakian falsely stated in an article published by CNN that Blatt, her supervisor, created an atmosphere of fear at the Tinder holiday party, that Blatt followed her that night to a company-booked hotel room, and that Blatt engaged in sexual activity with her without her consent. *Id.* ¶ 97. On December 18, 2018, Pambakian again falsely accused Blatt of sexual assault at the company holiday party in a news article published by the Verge. *Id.* ¶ 98.

### B. The Parties' Mutual Agreement to Arbitrate

In December 2017, Match adopted the ADR Program, with an effective date of February 1, 2018. Brook Decl. Ex. 1, at 24 ¶ 5. Under the ADR Program, Match and its employees mutually agreed to arbitrate all employment-related disputes against one another. *Id.* ¶¶ 5-6. The Agreement incorporates the ADR Program by reference, and in the event of a conflict between the Agreement and the ADR Program, the ADR Program controls. Agreement ¶ 5.

The Agreement states that all claims relating to Pambakian's employment will be subject to arbitration:

> 1. **Agreement to Arbitrate; Claims Covered by Agreement** … the Company and the Associate hereby consent to the resolution by arbitration on an individual basis of all claims or controversies *arising out of or in connection with Associate's application with, employment with, or termination from, the Company*.

Agreement ¶ 1 (latter emphasis added). The ADR Program includes similarly broad language:

> [T]he Company and the Associate consent and agree to the resolution by arbitration of all claims or controversies *involving or in any way concerning Associate's application with, employment with, or termination from, the Company*.

3

ADR Program ¶ 2 (emphasis added). The Agreement explicitly applies to Match's current and former officers and directors. It also expressly covers claims brought by Match (and its former officers) against Pambakian:

> This program is mutual, covering all claims that each Associate may have against the Company or that the Company may have against an Associate . . . All references to the "Company" in this Agreement shall include Match Group, Inc., and all of its respective related, parent, subsidiary, and affiliated entities, including all former, current and future officers, directors and employees of all such entities, all benefit plans and their fiduciaries and administrators, and all successors and assigns of these individuals or entities.

ADR Program ¶ 1; *see also* Agreement ¶ 1. The Agreement further provides that the "Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement." Agreement ¶ 2; *see also* ADR Program ¶ 4.1.

The following acknowledgement appeared in bold, capital letters immediately above Plaintiff's signature:

> **ASSOCIATE ALSO UNDERSTANDS THAT IT IS HIS/HER RESPONSIBILITY TO REVIEW THE MATCH GROUP, INC. ALTERNATIVE DISPUTE RESOLUTION PROGRAM WHICH CONTAINS ALL OF THE TERMS UNDER WHICH DISPUTES WILL BE RESOLVED UNDER THE PROGRAM. THE PROGRAM DOCUMENT IS INCORPORATED BY REFERENCE INTO THIS AGREEMENT. A COMPLETE COPY OF THE PROGRAM CAN BE OBTAINED AT THE COMPANY'S HUMAN RESOURCES' OFFICE OR BY ACCESSING MATCHGROUP POLICIES EXTERNAL LINK IN WORKDAY THROUGH A PERSONAL COMPUTER. THE PROGRAM CAN BE FOUND IN THE "Policies" SECTION OF THE WORKDAY DASHBOARD.**

Agreement at 2 (emphasis in original).

### C. Pambakian's Claims Against the Match Defendants Are Subject to Arbitration

Seventeen days after the New York action was filed, Pambakian dismissed her New York claims without prejudice, acknowledging that Match's policy requires arbitration.[2] Notwithstanding that acknowledgment, Pambakian filed suit against the Match Defendants in Los Angeles Superior Court on August 5, 2019. The Match Defendants removed the action to this Court on August 13, 2019 and filed a Demand for Arbitration with the American Arbitration Association on August 15, 2019, stating that all Pambakian's claims against the Match Defendants were subject to an arbitration agreement. Brook Decl. ¶ 2 & Ex. 1, at 44-47. The Match Defendants filed a motion to compel Pambakian to arbitrate her claims against them on August 28, 2019. *See Pambakian*, Docket No. 30. After the Match Defendants filed that motion to compel, and at the request of Pambakian, the AAA entered a 60-day stay to allow this Court to resolve the motion. *See* Brook Decl. ¶ 3.

### D. Blatt's Defamation Action

Separately, on August 13, 2019, Blatt filed a Demand for Arbitration against Pambakian alleging defamation and defamation per se. Brook Decl. Ex. 2. On October 7, 2019, Blatt filed an Amended Demand for Arbitration. Brook Decl. Ex 3.

Blatt intends to proceed with his claims against Pambakian in that arbitration. Because, however, the statute of limitations on Blatt's defamation claims was about to expire, out of an abundance of caution, Blatt also filed this defamation lawsuit, which Blatt marked as related to Pambakian's suit. *See* Docket No. 15. While Blatt

---

[2] *See Four Tinder plaintiffs drop out of lawsuit because Match might have quietly changed their contracts*, The Verge (as updated Sept. 4, 2018), *available at* https://www.theverge.com/2018/8/31/17805622/tinder-match-group-iac-lawsuit-plaintiffs-withdraw.

5

believes arbitration is the correct forum, Blatt could not be in a position where Pambakian successfully disputed the arbitration demand and subsequently contended that Blatt had failed to file his claim in timely manner. It remains Blatt's position—as made clear in the Match Defendants' motion to compel in the *Pambakian* litigation—that Blatt's defamation claims against Pambakian should proceed in arbitration. *See Pambakian*, Docket No. 30, at 12 n.4.

## III. ARGUMENT

### A. The Court Should Order Arbitration of Blatt's Claims

This is not a close case. As affirmed by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), the FAA declares a national policy favoring the enforcement of arbitration agreements: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("In our view, *Concepcion* crystalized the directive . . . that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.").

Because of the strong federal policy in favor of enforcing private arbitration provisions, "[t]he standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). The district court's role is limited to determining "whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). When both conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "Any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula*, 175 F.3d at 719 (internal quotation marks omitted).

All of the preconditions to arbitration are present here.

### 1. Blatt and Pambakian Are Parties to a Valid Agreement to Arbitrate Blatt's Claims

There is no question that Blatt and Pambakian agreed to arbitrate Blatt's claims.

***Covered parties.*** The Agreement covers claims involving Match or any of its "former, current and future officers, directors and employees." ADR Program ¶ 1; *see also* Agreement ¶ 1. Blatt is the former CEO of IAC, Match, and Tinder; his claims against Pambakian are therefore covered by the Agreement. *See* FAC ¶¶ 2, 20; Brook Decl. Ex. 1, at 39 ¶¶ 3-5.

***Covered subject matter.*** The Agreement covers "all claims or controversies involving or in any way concerning [Pambakian's] application with, employment with, or termination from, the Company." ADR Program ¶ 2; *see also* Agreement ¶ 1. It further confirms that it "cover[s] all claims that [Pambakian] may have against [Blatt] or that [Blatt] may have against [Pambakian]." ADR Program ¶ 1; *see also* Agreement ¶ 1. Blatt, who was Pambakian's workplace supervisor, claims that Pambakian defamed him by falsely stating that he harassed and assaulted her at a company-sponsored holiday party. FAC ¶¶ 94-98, 111-115. These claims clearly "involve" and "concern" Pambakian's employment with Match.

***Covered claims.*** The Agreement covers "personal injury or employment related tort claims (including claims for negligence, gross negligence, intentional harm); claims for discrimination, harassment or retaliation of any kind . . . ; and claims for violation of any federal or state statute or common law or regulation." ADR Program ¶ 2; *see also* Agreement ¶ 1. Blatt asserts claims under California tort law that are covered under the Agreement. Compl. ¶¶ 93-135.

7

There can be no doubt therefore that Blatt's claims are subject to arbitration. If there were any doubt, however, it would be put to rest by the "presumption of arbitrability" mandated by the FAA. *See AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (citation omitted).

The presumption of arbitrability is "particularly applicable" where, as here, the language of the clause is broad. *Id.* In such cases, "only the most forceful evidence" will exclude a matter from arbitration, *id.*, and arbitration is *required* if Plaintiff's allegations merely "touch matters" covered by the contract containing the arbitration clause, *Simula*, 175 F.3d at 721 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)); *accord Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1450–51 (9th Cir. 1986) (defamation claim relating to speech about employee's conduct while employed "arose out of [the employee's] employment" and was therefore subject to arbitration); *Balan v. Tesla Motors, Inc.*, 2019 WL 2635903, at *4-5 (W.D. Wash. June 27, 2019) (ordering arbitration of defamation claim based on statements "arising from or relating to" plaintiff's employment, including statements about alleged employment-related misconduct).

The Supreme Court and the Ninth Circuit have affirmed repeatedly that arbitration provisions using the terms "arising out of or relating to"—language materially indistinguishable from that used here ("involving or in any way concerning," ADR Program ¶ 2, and "arising out of or in connection with," Agreement ¶ 1)—are "broad," "far-reaching," or "the broadest possible" in scope. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) ("broad"); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("broad and far reaching" in scope); *Britton v. Co-op Banking*

8

*Grp.*, 4 F.3d 742, 745 (9th Cir. 1993) ("broad on its face"; such language is "routinely used … to secure *the broadest possible* arbitration coverage" (emphasis added)).[3]

Indeed, in a recent case in this District brought by one of Pambakian's fellow employees—who was subject to the same Agreement and who also asserted employment-related claims—Judge Andre Birotte held that the broad language of the Agreement required the plaintiff to bring her claims in arbitration, rather than in court. *Sanfilippo v. Tinder, Inc.*, No. 2:18-cv-08372-AB (JEMx), 2018 WL 6681197, at *5 (C.D. Cal. Dec. 18, 2018); *see also Garcia de Alba v. Brinker Int'l, Inc.*, No. 16-cv-3486-FMO (JCx), 2017 WL 10543656 (C.D. Cal. June 30, 2017) (noting that an arbitration provision covering any claims "arising out of or in connection with . . . employment" required arbitration of "all claims related to plaintiffs' employment, including any claims that [Defendant] could or should have asserted against plaintiffs"). There is no reason for this Court to reach a different result.

---

[3] To the extent there is any question as to the applicability of the Agreement, that question must be resolved by the arbitrator. Under the Agreement, "[o]nly an arbitrator can interpret the scope and application of the … Program," aside from the representative action waiver, the scope of which is to be determined by the Court. Agreement ¶ 4. Furthermore, the parties' invocation of the rules of AAA, ADR Program ¶ 6, "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," because the AAA rules permit the arbitrator to determine the scope of his or her own jurisdiction. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013). Given such clear and unmistakable evidence, all disputes as to arbitrability are reserved to the arbitrator, rather than this Court. *Id.*; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019) ("[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944, 2014 WL 7206620, at *1, 4 (N.D. Cal. Dec. 18, 2014) (holding that, where the parties had agreed to apply AAA rules, the question whether pre-agreement claims were arbitrable was reserved to the arbitrator).

9

## 2. Blatt Is Entitled to Enforce the Agreement

Blatt is identified in the Agreement as a party with whom Pambakian agreed to arbitrate. He is thus a third-party beneficiary who is entitled to compel Pambakian to comply with her agreement.

It is well established that a non-signatory to an arbitration agreement can enforce its terms under traditional principles of contract and agency law, including the third-party-beneficiary doctrine. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *see also* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").[4] In California, a party is a third-party beneficiary if the intent to benefit the party "'appears from the terms of the contract.'" *Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (2017) (citation omitted). The third-party beneficiaries need not be identified by name, so long as the arbitration agreement expressly requires arbitration of claims against a specific class of third parties. *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838-39 (2013).

*Ronay* controls here. In *Ronay*, the plaintiff signed an arbitration agreement with a corporate entity, CapWest, in which the plaintiff agreed to arbitrate "any controversy arising out of or related to [the plaintiff's] accounts, the transactions with [CapWest], its officers, directors, *agents*, registered representatives and/or employees for [plaintiff]." *Id.* at 839 (original emphasis omitted) (second alteration in original). The Court of Appeal, bound by the plain language of the agreement, held that "[b]y expressly requiring arbitration of claims against CapWest's agents and registered representatives, the arbitration clause was intended to benefit [the

---

[4] California law governs whether Blatt, as a non-signatory, may invoke the arbitration agreement. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).

defendants]." *Id.* Here too, by requiring arbitration of claims brought by and against Match agents, the arbitration clause was intended to benefit Blatt.

### B. The Court Should Stay Blatt's Litigation Against Pambakian

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, Blatt respectfully requests that this Court stay Blatt's litigation against Pambakian pending resolution of the arbitration.

## IV. CONCLUSION

Blatt and Pambakian have agreed to arbitrate all employment-related claims between them, including the claims Blatt asserts here. The Agreement is valid, enforceable, and binding. Plaintiff respectfully requests that the Court compel the parties to arbitrate their claims, as they contractually agreed to do.

DATED: October 7, 2019

DAVIDA P. BROOK
VINEET BHATIA
SUSMAN GODFREY LLP

By: */s/ Vineet Bhatia*
    VINEET BHATIA

Attorneys for Defendant
GREGORY BLATT