DEBORAH L. STEIN (SBN 224570)
    DStein@gibsondunn.com
MICHAEL H. DORE (SBN 227442)
    MDore@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:   (213) 229-7164
Facsimile:    (213) 229-6164

ORIN SNYDER (*pro hac vice* application forthcoming)
    OSnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-2400
Facsimile:  (212) 351-6335

GRETA B. WILLIAMS (SBN 267695)
    GBWilliams@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 887-3745
Facsimile:  (202) 530-4230

Attorneys for Defendants Rosette Pambakian
and Sean Rad

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG BLATT,<br><br>            Plaintiff,<br><br>    v.<br><br>ROSETTE PAMBAKIAN and SEAN RAD; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 2:19-CV-07046-MWF-FFM<br><br>Hon. Michael W. Fitzgerald<br><br>**ROSETTE PAMBAKIAN'S DECLARATION IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Hearing Date:  November 4, 2019<br>Hearing Time:  10:00 a.m.<br>Courtroom:      5A |

Gibson, Dunn &
Crutcher LLP

PAMBAKIAN DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION–CASE NO. 2:19-CV-07046-MWF-FFM

# DECLARATION OF ROSETTE PAMBAKIAN

I, Rosette Pambakian, hereby declare as follows:

1.     I am a Defendant in the above-captioned action.

2.     I submit this declaration in support of my Opposition to Plaintiff's Motion to Compel Arbitration and Stay Litigation (the "Opposition").

3.     In or around late April 2017, I was approached by Lisa Nelson, Match's Chief Human Resources Officer, regarding an incident involving Plaintiff Greg Blatt, Tinder's then-CEO, at the Tinder holiday party in December 2016.

4.     I understand that following that report, Tinder purported to launch and conduct an "investigation" into that sexual assault.

5.     On May 4, 2017, I wrote to Ms. Nelson that I was "not comfortable talking about this [matter regarding Blatt's misconduct] further until I get some counsel from a lawyer." A true and correct copy of this text message is attached hereto as "**Exhibit A**."

6.     On or about that same day, I received a written response from Ms. Nelson, who informed me that "[t]here's no need at all to talk to anyone else in the company about this matter unless you want to." A true and correct copy of this text message is attached hereto as "**Exhibit B**."

7.     In or around October 2017, Ms. Nelson approached me with a proposed non-disclosure/disparagement agreement ("NDA") regarding Blatt's assault and an offer to increase my compensation in order to "put this terrible ordeal behind us." I did not sign the proposed NDA.

8.     On January 17, 2018, Match/IAC's Human Resources Department sent an email to me containing a link to a DocuSign file.

9.     I recall clicking on the link and being taken to an electronic document that contained a number of different Match policies. I had to scroll through all of these policies, and I believe at least some of them required me to answer questions

Gibson, Dunn & Crutcher LLP

1

PAMBAKIAN DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY LITIGATION–CASE NO. 2:19-CV-07046-MWF-FFM

1    at the end before I could move on to the next one.  At the end of this process, I was

2    required to electronically sign my name in order to be able to complete the

3    document.  I had to complete the document and certify my compliance with these

4    policies by a specified deadline, and it was my understanding that completing this

5    document was mandatory in order to maintain my job.

6        10.    I believe there was an option to download the completed file after I

7    signed my name electronically, but I do not recall doing so.  I do not have a

8    personal copy of the signed policies.

9        11.    Match/IAC never presented me with any hard copies of any of the

10   documents included in the DocuSign file after I completed the process.  And

11   Match/IAC never provided me with a full set of the arbitration rules under the

12   alternative dispute resolution policy.

13       12.    At the time that I completed the DocuSign file, I did not understand

14   that I was signing an arbitration agreement, or that an alternative dispute policy

15   was related to arbitration.  At no point did Match/IAC explain to me what an

16   alternative dispute policy was, or that the company was implementing an

17   arbitration policy.  I attended no meetings to discuss the implementation of any

18   arbitration policies, and, to my knowledge, none were offered.

19       13.    I did not believe that I had any ability to negotiate any of the terms of

20   the documents contained in the DocuSign file, including the "Mutual Agreement to

21   Arbitrate Claims on an Individual Basis and Summary of the Alternative Dispute

22   Program for California" (the "Summary Agreement")—and Match never told me

23   otherwise.

24       14.    I believed that I was required to agree to all of the policies in the

25   DocuSign file by the specified deadline—including the Summary Agreement—in

26   order to keep my job at Tinder/Match.  I also believed that any documents

27   contained in the DocuSign file, which indicated that the documents were being sent

28

Gibson, Dunn &
Crutcher LLP

2
PAMBAKIAN DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION–CASE NO. 2:19-CV-07046-MWF-FFM

to me by "Match Group Human Resources," addressed my work as an employee at Tinder.

15.     In January 2018, I had no intention of permitting Blatt to force me into arbitration to pursue any litigation claims against me.  I did not intend to make Blatt a beneficiary of any agreement with respect to claims involving his sexual misconduct against me, or claims accusing me of participating in an unlawful conspiracy and/or making allegedly defamatory statements in furtherance of a lawsuit.

16.     To the best of my knowledge, Tinder did not have any arbitration policies prior to Match/IAC imposing them in late 2017/early 2018.

17.     On August 14, 2018, I was a named plaintiff in a lawsuit that I filed along with other Tinder employees in New York state court against Match and IAC, relating to the valuation of Tinder stock options following the merger of Tinder and Match (the "Valuation Case").  After the Valuation Case was filed, Defendants Match and IAC presented my counsel with a copy of a purported arbitration agreement that I had apparently signed in January 2018.  Prior to August 2018, I was not aware that I had even signed this purported arbitration agreement.

18.     I understand that Blatt filed a demand to arbitrate his claims against me with the American Arbitration Association ("AAA") on August 13, 2019.  To the best of my recollection and knowledge, Blatt never consulted or attempted to consult with me (or any of the designated agents who are authorized to act on my behalf regarding this matter) about this topic at any time prior to filing this

Gibson, Dunn &
Crutcher LLP

3
PAMBAKIAN DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION–CASE NO. 2:19-CV-07046-MWF-FFM

1  arbitration demand.

2        I declare under penalty of the perjury under the laws of the United States of

3  America that the foregoing is all true and correct.

4

5  Executed on October 15, 2019, in Los Angeles, California.

6

7                                             Rosette Pambakian

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

PAMBAKIAN DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION–CASE NO. 2:19-CV-07046-MWF-FFM

# Exhibit A

**Pambakian, Rosette**

 Lisa Nelson; ████████████████ Rosette;

████████                                    2017-05-04 18:23:20

I'm not comfortable talking about this further until I get some counsel from a lawyer. I've made arrangements to do that as soon as I get back into town. I'll be able to cooperate fully after that. Thanks.

Lisa Nelson + ██████████         2017-05-04 18:49:49

I understand. If either of you need me, I'm here.

# Exhibit B

**Pambakian, Rosette**



Lisa Nelson +  ████████████                                    2017-05-05 00:43:33

Hey Rosette, I wanted to thank you for your help over the last couple of days. There's no need at all to talk to anyone else in the company about this matter unless you want to.