DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
LORA J. KRSULICH (315399)
lkrsulich@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

VINEET BHATIA (*Pro Hac Vice*)
vbhatia@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Attorneys for Plaintiff
GREGORY BLATT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| GREGORY BLATT, | Case No. 2:19-cv-07046-MWF-FFMx |
|---|---|
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| v. | |
| ROSETTE PAMBAKIAN and SEAN RAD; and DOES 1 – 10, inclusive | Judge:  Hon. Michael W. Fitzgerald<br>Ctrm.:  5A<br>Date:   November 4, 2019<br>Time:   10:00 a.m. |
| Defendants. | |

6915052v1/016409

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................1

II.    ARGUMENT ...................................................................................3

    A.    The ADR Agreement Requires Arbitrability and Pambakian's
        Defenses to Arbitration to Be Decided by the Arbitrator. ...................3

        1.    The ADR Agreement's Language Is Dispositive. ......................3

        2.    Pambakian, a Highly Paid and Well-Counseled Executive,
              Cannot Void Her ADR Agreement By Claiming to Be
              Unsophisticated. ...........................................................................5

    B.    Pambakian Ignores the ADR Agreement's Express Language
        Including Blatt As an Intended Third-Party Beneficiary. .....................7

    C.    The ADR Agreement Is Neither Procedurally Nor Substantively
        Unconscionable. ...................................................................................11

        1.    The ADR Agreement is not procedurally unconscionable. .......12

        2.    The ADR Agreement is not substantively unconscionable. .......16

    D.    Blatt Did Not Breach the ADR Agreement. .........................................18

    E.    Blatt Did Not Waive His Right to Compel Arbitration. .......................22

III.   CONCLUSION .............................................................................23

6915052v1/016409

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*A & M Produce Co. v. FMC Corp.*,
  135 Cal. App. 3d 473 (1982)..................................................................................18

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2008) ...................................................................19

*Armendariz v. Foundation Health Psychare Servs.*,
  24 Cal. 4th 83 (2000) ..............................................................................12, 13, 16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...........................................................................................15, 17

*Aviles v. Quik Pick Express, LLC*,
  No. 15-cv-5214-MWF, 2015 WL 9810998 (C.D. Cal. Dec. 3, 2015) ......................6

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ...........................................................................................18

*Balun v. Tesla Motors, Inc.*,
  2019 WL 2635903 (W.D. Wash. June 27, 2019)......................................................11

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015)....................................................................................6

*Brown v. Dillards, Inc.*,
  430 F.3d 1004 (2005) ...............................................................................................19

*Casas v. Carmax Auto Superstores California LLC*,
  224 Cal. App. 4th 1233 (2014) .................................................................................17

*Cione v. Foresters Equity Servs., Inc.*,
  58 Cal. App. 4th 625 (1997) .......................................................................................8

*Circuit City Stores, Inc. v. Mantor*,
  335 F.3d 1101 (9th Cir. 2003)...................................................................................16

*Creative Telecomms., Inc. v. Breeden*,
  120 F. Supp. 2d 1225 (D. Haw. 1999) ......................................................................22

*Dean Witter Reynolds, Inc. v. Superior Court*,
  211 Cal. App. 3d 758 (1989).....................................................................................13

*Fardig v. Hobby Lobby Stores, Inc.*,
  No. SACV 14-561-JVS, 2014 WL 2810025 (C.D. Cal. June 13, 2014) ..................15

ii

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019) ...................................................................2, 4, 18

*Howard v. Octagon, Inc.*,
 No. 13-cv-01111 PJH, 2013 WL 5122191
 (N.D. Cal. Sept. 13, 2013) ...................................................................15

*Hutchins v. TNT/Reddaway Truck Line, Inc.*,
 939 F. Supp. 721 (N.D. Cal. 1996) .......................................................14

*Ingle v. Circuit City Stores*,
 328 F.3d 1165 (9th Cir. 2003) ..............................................................17

*Jensen v. U-Haul Co. of Cal.*,
 18 Cal. App. 5th 295 (2017) ....................................................................7

*Jurado v. Schutz 655 LLC*,
 No. 216CV05996CASRAOX, 2017 WL 600076
 (C.D. Cal. Feb. 13, 2017) ......................................................................22

*Kilgore v. KeyBank, N.A.*,
 673 F.3d 947 (9th Cir. 2012) ................................................................12

*Knatt v. J. C. Penney Corp., Inc.*,
 2016 WL 1241550 (S.D. Cal. Mar. 30, 2016) ......................................17

*Lamps Plus, Inc. v. Varela*,
 587 U.S. 1407 (2019) ...............................................................................1

*Loewen v Lyft, Inc.*,
 129 F. Supp. 3d 945 (N.D. Cal. 2015) ..................................................13

*Macaulay v. Norlander*,
 12 Cal. App. 4th 1 (1992) ........................................................................8

*Melez v. Kaiser Found. Hosps., Inc.*,
 No. 2:14-CV-08772-CAS, 2015 WL 898455
 (C.D. Cal. Mar. 2, 2015) ........................................................................21

*Merrill Lynch Investment Managers v. Optibase, Ltd.*,
 337 F.3d 125 (2d Cir. 2003) ..................................................................19

*Mohamed v. Uber Techs., Inc.*,
 848 F.3d 1202 (9th Cir. 2013) .................................................................4

*Momot v. Mastro*,
 652 F.3d 982 (9th Cir. 2011) ..............................................................1, 4

*Morris v. Redwood Empire Bancorp*,
 128 Cal. App. 4th 1305 (2005) ..............................................................13

iii

6915052v1/016409

*Nabors Drilling USA, LP v. Pena*,
   385 S.W.3d 103 (Tex. App. 2012) ................................................................17

*Norcia v. Samsung Telecommunications Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ....................................................................7

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ........................................................4, 5, 18

*OTO, LLC v. Kho*,
   8 Cal. 5th 111 (2019) ................................................................................13

*Pang v. Samsung Elecs. Am, Inc.*,
   371 F. Supp. 3d 633 (N.D. Cal. 2019) ......................................................7

*Paxton v. Macy's W. Stores, Inc.*,
   No. 118CV00132LJOSKO, 2018 WL 4297763
   (E.D. Cal. Sept. 7, 2018) ..........................................................................22

*Peleg v. Neiman Marcus Group, Inc.*,
   204 Cal.App.4th 1425 (2012) ...................................................................17

*Peng v. First Republic Bank*,
   219 Cal. App. 4th 1462 (2013) .................................................................15

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*,
   55 Cal. 4th 223 (2012) .......................................................................12, 13

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ................................................2, 14, 15, 17

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .....................................................................................5

*Ronay Family Limited Partnership v. Tweed*,
   216 Cal. App. 4th 830 (2013) .................................................................7, 8

*Sanfilippo v. Tinder, Inc.*,
   No. 2:18-cv-8372-AB, 2018 WL 6681197
   (C.D. Cal. Dec. 18, 2018) ......................................................................2, 11

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ....................................................................11

*Steiner v. Horizon Moving Systems, Inc.*,
   2008 WL 4822774 (C.D. Cal. Oct. 30, 2008) ..........................................22

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ..................................................................17

iv

*Tribeca Cos., LLC v. First Am. Title Ins. Co.*,
  239 Cal. App. 4th 1088 (2015) ................................................................5

*Ulbrich v. Overstock.Com, Inc.*,
  887 F. Supp. 2d 924 (N.D. Cal. 2012) .................................................15

*Victoria v. Superior Court*,
  40 Cal. 3d 734 (1985) ..........................................................................10

*Wu v. JPMorgan Chase Bank, N.A.*,
  No. LACV1900363JAKSKX, 2019 WL 4261880
  (C.D. Cal. Aug. 5, 2019) ......................................................................18

*Zolezzi v. Dean Winter Reynolds, Inc.*,
  789 F.2d 1447 (9th Cir. 1986).............................................................11

*Statutes*

9 U.S.C. § 2 ...................................................................................................1

California Civil Procedure Code § 1281.8................................................18

Federal Arbitration Act ...............................................................................1

v

## I.   **INTRODUCTION**

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements *according to their terms*." *Lamps Plus, Inc. v. Varela*, 587 U.S. 1407, 1412 (2019) (citing 9 U.S.C. § 2) (emphasis added). Yet Defendant Rosette Pambakian repeatedly ignores the clear terms of the ADR Agreement[1] she willingly signed. She instead contends she is not required to arbitrate this dispute, claiming: (i) that Plaintiff Greg Blatt may not invoke the ADR Agreement; (ii) the ADR Agreement is unconscionable; and (iii) that Blatt breached the ADR Agreement or otherwise waived his right to enforce it. All these arguments fail.

As an initial matter, Pambakian herself concedes that the arbitrator, rather than this Court, should resolve questions about the "scope and application" of the ADR Program. *See* ADR Agreement ¶4[2]; *see also* Opposition, ECF No. 26, at 15:1–3, 15:12–14, 22:8–3 (conceding that "scope and application" are questions for the arbitrator). This acknowledged delegation means that all arguments advanced by Pambakian to avoid arbitration must be decided by the appointed arbitrator. *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ("[T]his language, delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'"). Even if Pambakian had not conceded this fact, as the Supreme Court recently explained, a court "may not override the [arbitration] contract" and is instead required to allow the arbitrator to decide the issue of arbitrability even if convinced the ADR Agreement does not apply to the

---

[1] The "ADR Agreement" is the Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Alternative Dispute Program for California, available at ECF No. 19-3, at Ex. 1. "ADR Program" is the Match Group, Inc. Alternative Dispute Resolution Program for California, also available at ECF No. 19-3, at Ex. 1.

[2] The ADR Agreement states: "Only an arbitrator can interpret the scope and application of the remainder of the Program." Agreement ¶4; *see also id.* ¶1 ("the Company and the Associate hereby consent to the resolution by arbitration on an individual basis of all claims or controversies arising out of or in connection with Associate's application with, employment with, or termination from, the Company").

1

particular dispute before it. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). Accordingly, Blatt's motion should be granted on this basis alone.

But, even if the Court were to reach the arguments advanced by Pambakian to avoid arbitration, all of them fail to persuade:

**1.   Blatt is a third-party beneficiary.** Blatt, who until August 2018 was an officer or director of the Match Group, is either a party to the ADR Agreement or, at a minimum, is a third-party beneficiary of the ADR Agreement. The very first paragraph of the ADR Agreement provides that the Agreement includes "Match Group, Inc., and all of its related, subsidiary, and affiliated entities, and ***the former, current and future officers, directors, and employees of all such entities***." ADR Agreement ¶1 (emphasis added); ADR Program ¶1 (emphasis added). There is no question that Blatt is a "former" officer and director of Match. Pambakian completely ignores this language of the ADR Agreement.

**2.   The ADR Agreement is not unconscionable.** Pambakian's argument that the ADR Agreement is unconscionable is meritless. Her argument ignores recent Ninth Circuit authority in *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017), where the Court rejected arguments that a far more lopsided arbitration agreement was unconscionable. *Poublon* further rejected one of Pambakian's specific arguments related to the employer's reserved right to amend the ADR Agreement. *See id.* at 1269. Pambakian also ignores Judge Birotte's recent decision––cited in Blatt's opening brief—construing the very same ADR Agreement at issue here, and concluding that it is neither substantively nor procedurally unconscionable. *See Sanfilippo v. Tinder, Inc.*, No. 2:18-cv-8372-AB (JEMx), 2018 WL 6681197, at *6 (C.D. Cal. Dec. 18, 2018).

**3.   Blatt has not breached the ADR Agreement or waived his right to enforce it.** Distorting the events that led to this point, Pambakian contends that Blatt breached the ADR Agreement and otherwise waived his right to arbitrate by filing

2

6915052v1/016409

suit in federal court. Not only is Pambakian legally incorrect, she is wrong on the facts. Blatt filed his Demand for Arbitration on the ***same day*** he filed in federal court. This is not a forum shopping situation. Blatt has always believed that the claims against Pambakian belong in arbitration, but the complaint had to be filed in court to avoid any issue concerning the statute of limitations. Furthermore, any "delay" in presenting this Motion to Compel Arbitration to this Court is attributable to Defendant and her counsel, not Blatt. *See* Bhatia Decl. ¶¶3–9.

Accordingly, the Court should grant Blatt's motion to compel, sending all claims relating to Pambakian to arbitration.

## II.   ARGUMENT

### A.   The ADR Agreement Requires Arbitrability and Pambakian's Defenses to Arbitration to Be Decided by the Arbitrator.

The threshold issue is whether the enforceability of the ADR Agreement is a question for the Court or the arbitrator. Pambakian concedes that the "scope and application" of the ADR program is for the arbitrator to decide, but nonetheless insists that "enforceability" of the ADR program is a decision for the Court. *See* Opposition (Opp.), ECF No. 26, at 15 ("[U]nder the ADR Program, *only* questions about the 'scope and application' of the ADR Program—not its enforceability—are arbitrable." (emphasis added)). Although Blatt is confident that both this Court and the arbitrator would agree that the ADR Agreement is valid, enforceable, and applies to the claims in the First Amended Complaint ("FAC"), the parties here have agreed that the arbitrator, rather than a Court, should rule on Pambakian's defenses to arbitration.

#### 1.   The ADR Agreement's Language Is Dispositive.

As explained in Blatt's Motion, the question of who decides issues of arbitrability is a matter of contract interpretation. If the contract contains "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," then the

6915052v1/016409

1   Court must give effect to that agreement. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724

2   F.3d 1069, 1074 (9th Cir. 2013). And as the Supreme Court recently explained,

> When the parties' contract delegates the arbitrability
> question to an arbitrator, a court may not override the
> contract. In those circumstances, a court possesses no
> power to decide the arbitrability issue. That is true even if
> the court thinks that the argument that the arbitration
> agreement applies to a particular dispute is wholly
> groundless.

10   *Schein*, 139 S. Ct. at 528.

11      The ADR Agreement contains clear and unmistakable evidence that the issue

12   of arbitrability has been delegated to the arbitrator. "Other than the [representative

13   action] waiver, only the arbitrator can interpret the scope and application of the

14   remainder of this Program and the ADR Agreement." ADR Program ¶13; *see also*

15   ADR Agreement ¶3 (similar). This delegation of decision-making authority for all

16   questions related to the "application" of the ADR Agreement includes all of

17   Pambakian's argument in her Opposition for why this case should not be arbitrated.

18   *See Momot*, 652 F.3d at 988 ("[T]his language, delegating to the arbitrators the

19   authority to determine 'the validity or application of any of the provisions of' the

20   arbitration clause, constitutes 'an agreement to arbitrate threshold issue concerning

21   the arbitration agreement'"); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1202,

22   1208–09 (9th Cir. 2013) (upholding delegation of arbitrability where the agreement

23   gave the arbitrator authority to determine the "validity or application" and the

24   "enforceability, revocability, or validity" of the respective arbitration clauses).

25   Pambakian provides no authority to the contrary.

26      Furthermore, the ADR Agreement here incorporates the AAA rules. And as

27   the Ninth Circuit explained in *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d

28   1069 (9th Cir. 2013), the AAA rules contain "clear and unmistakable evidence that

4

the parties agreed to arbitrate arbitrability." *Id.* at 1074. Pambakian does not dispute *Oracle America*'s central holding, but instead contends that the ADR Program does not expressly incorporate the AAA rules, and the ADR Program's delegation of "scope and application" to the arbitrator implies that the parties did not intend for the AAA rules to apply. Again, Pambakian ignores the clear terms of the ADR Agreement, which state that any arbitration "will be administered in accordance with the applicable arbitration rules and procedures of the American Arbitration Association (AAA) or another alternative dispute resolution (ADR) provider selected by the parties . . . ." ADR Program ¶6. The AAA rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Employment Rules, Rule 7. The AAA rules plainly govern, and those rules provide that the issue of arbitrability will be determined by an arbitrator. The Court should grant Blatt's motion and send this case to arbitration.

> **2.**      **Pambakian, a Highly Paid and Well-Counseled Executive, Cannot Void Her ADR Agreement By Claiming to Be Unsophisticated.**

Pambakian further argues that the ADR Agreement's language incorporating the AAA rules is not "clear and unmistakable" because Pambakian is inexperienced and untrained in the law. Opp. at 15. This argument fails for at least two independent reasons.

*First*, as the Supreme Court has explained, the rule requiring that the parties' intent to arbitrate arbitrability must be "clear and unmistakable" is an "'interpretive rule' based on an assumption about the parties' expectations," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010), not an exception to the well-established principle that "[t]he terms of a contract are determined by objective rather than subjective criteria," *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th

5

1088, 1111 (2015). Hence, although the question remains undecided in the Ninth Circuit, "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent [to delegate] do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015). The parties here clearly and unmistakably manifested intent to be bound by an agreement containing a clear and unmistakable delegation of arbitrability questions.

**Second**, even if Pambakian's sophistication were relevant, Pambakian is a sophisticated party and has provided no evidence to the contrary; thus, *Brennan* controls. Pambakian was a Tinder Vice President, and Head of Marketing and Communications for all of Tinder. Before her termination, Pambakian was a very highly paid executive: Her complaint in the related Pambakian Lawsuit[3] alleges that her termination "forced" her "to surrender millions of dollars in equity granted to her as compensation for her work as an executive at Tinder." Plaintiff's Request for Judicial Notice (Plf. RJN), Ex. 1, ¶64. Her LinkedIn page notes multiple awards for her acumen in marketing and public relations. *See* Plf.'s RJN, Ex. 3. She is not the type of unsophisticated party[4] who is not subject to otherwise clear and unmistakable terms in the ADR Agreement.

Pambakian provided a declaration with her opposition, referencing the fact that she hired a lawyer in May 2017 in connection with Match's investigation of the events at the Tinder holiday party. But the fact that she hired a lawyer eight months before signing the ADR Agreement undermines her claim.[5] Pambakian apparently

---

[3] The Pambakian Lawsuit refers to a lawsuit that Defendant Pambakian filed in the Central District of California. Case No. 19-7053.

[4] She is, for example, a far more "sophisticated" party than the truck driver plaintiff in *Aviles v. Quik Pick Express, LLC*, No. 15-cv-5214-MWF (AGRx), 2015 WL 9810998 (C.D. Cal. Dec. 3, 2015).

[5] Pambakian also submitted a declaration in support of her opposition to the motion to compel arbitration in the Pambakian Lawsuit (Case No. 19-7053, Dkt. No. 45-14). Her declaration there does not provide any specific facts indicating that she is unsophisticated.

6

knew how to hire a lawyer when she had questions or concerns. Nothing prevented her from asking that same or a different lawyer to review the ADR Agreement before she signed it.

In sum, the language of the ADR Agreement controls, and it requires the arbitrator, not the court, to decide the issues raised in Pambakian's opposition.

## B. Pambakian Ignores the ADR Agreement's Express Language Including Blatt As an Intended Third-Party Beneficiary.

Pambakian cannot avoid the plain fact that Blatt is either a direct party to the ADR Agreement or a third-party beneficiary of the ADR Agreement. The intent to benefit Blatt is evident from the face of the ADR Agreement. In its first paragraph, the ADR Agreement defines "company" to include all its "***former, current, and future officers, directors and employees***." ADR Program ¶1 (emphasis added); *see also* ADR Agreement ¶1. This definition clearly includes Blatt, who at the time Pambakian signed the agreement in January 2018, was Match's ***former*** CEO and a ***current*** director of the Match Group Board. *See* Blatt Decl. ¶¶2–3. *See, e.g.*, *Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (2017) (citation omitted); *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. Ap. 4th 830, 838–39 (2013) (opining that the third-party beneficiary need not be identified by name nor a signatory to the contract).[6]

Without even mentioning the language of the ADR Agreement, Pambakian claims that Blatt has "no basis" to claim that Match and Pambakian intended to contract for Blatt's benefit. Opp. at 12. But, of course, the plain language of the ADR Agreement—which Pambakian ignores entirely—***is*** the basis for Blatt's arguments.

---

[6] Pambakian's claim that she did not intend to benefit Blatt by signing the ADR Agreement is even more beside the point, particularly when Pambakian claims that "*she did not even know* that she was signing an arbitration agreement . . . ." Opp. at 5. Under California law, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." *Pang v. Samsung Elecs. Am, Inc.*, 371 F. Supp. 3d 633, 638 (N.D. Cal. 2019) (quoting *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017)). "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Id.*

7

ADR Program ¶1, *see also* ADR Agreement ¶1; *see also* ADR Program ¶2 ("[T]he Company and the Associate consent and agree to the resolution by the arbitration of all claims or controversies ***involving or in any way concerning*** Associate's application with, employment with, or termination from, the Company." (emphasis added)).

Pambakian likewise ignores case after case establishing that the ADR Agreement covers Blatt as a third-party beneficiary. She, for example, offers no meaningful way to distinguish *Ronay Family Limited Partnership v. Tweed*, 216 Cal. App. 4th 830 (2013), a case that is on all fours. *See* Opp. at 11 ("To the extent *Ronay* applies here at all, it is for its recognition . . . .").

In *Ronay*, the plaintiff signed an arbitration agreement with a corporate entity, CapWest, in which the plaintiff agreed to arbitrate "any controversy arising out of or related to [the plaintiff's] accounts, the transactions with [CapWest], its officers, directors, agents, registered representatives and/or employees for [plaintiff]." *Id.* at 839 (original emphasis omitted) (second alteration in original). The Court of Appeal, applying the plain language of the agreement, held that "[b]y expressly requiring arbitration of claims against CapWest's agents and registered representatives, the arbitration clause was intended to benefit [the defendants]." *Id.*

Numerous California cases are in accord. *See, e.g.*, *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625 (1997) (non-signatory securities firm could invoke arbitration clause in contract between employee and securities industry self-regulatory organization); *Macaulay v. Norlander*, 12 Cal. App. 4th 1, 7 (1992) (non-signatory "introducing broker" could invoke clause in contract between customer and clearing broker that required arbitration of controversies with introducing broker).

Instead of addressing the terms of the ADR Agreement or the relevant cases, Pambakian first argues that the "circumstances under which the agreement was made" do not support extending the benefits of the ADR Agreement to Blatt. Opp. at 10. The only "circumstances" that Pambakian points to, however, is her apparent

8

decision to "get some counsel from a lawyer" in May 2017—**eight months before** she signed the agreement. Opp. at 10, Pambakian Decl., Ex. A. This argument is a total red herring. That Pambakian consulted a lawyer eight months prior is not inconsistent with an intent to arbitrate claims. Lawyers are equally active in judicial and arbitral forums, and dispute resolution is equally available in both forums. If anything, Pambakian's decision to consult a lawyer **before** she signed the ADR Agreement undercuts her argument that she is "a woman not sophisticated in legalese" who had to rely solely on Match's representations about the ADR Agreement. *See* Opp. at 15–16.

Pambakian's next argument—that Match intended to solely benefit itself when it used the term "Company" throughout the ADR Agreement—is also wrong. *See* Opp. at 11 ("Indeed, the 'ADR Program's' use of the term 'Company' demonstrates that Match was focused more on the company itself than on others incidentally implicated by the definition of 'Company.'"). In its *first paragraph*, the ADR Agreement defines "Company" to include all its "*former, current, and future officers, directors and employees*." ADR Program ¶1 (emphasis added), *see also* ADR Agreement ¶1. That Match elected to use the term "Company" as a shorthand moving forward instead of its longer definition for all the parties covered amounts to nothing other than "Company" is a defined term in the ADR Agreement that includes parties other than Match itself.

Finally, Pambakian argues that Blatt is not a third-party beneficiary because the New York valuation lawsuit is not a "workplace dispute." *See* Opp. at 12–14. This argument is irrelevant to the question whether Blatt is a third-party beneficiary––a question that is controlled by the ADR Agreement's terms. Rather, this is a backdoor attempt to argue "scope," which Pambakian plainly concedes is a question for the arbitrator to decide. *See* Opp. at 15 ("[U]nder the ADR Program, *only* questions about the 'scope and application' of the ADR Program—*not its enforceability*—are arbitrable."); *see also id.* (recognizing that the ADR Agreement

9

contains "an express delegation of issues about the 'scope and application' of the ADR program" (emphasis added)); *id.* at 22 ("[T]he ADR Program's explicit delegation provision only puts questions about the 'scope and application' of the ADR Program—not its enforceability—before an arbitrator."). Tellingly, Pambakian's featured case on this point, *Victoria v. Superior Court*, 40 Cal. 3d 734 (1985), does not even mention the term "third-party beneficiary," let alone include any discussion of whether a third party may invoke the protection of an arbitration agreement.[7] To the extent Pambakian has arguments regarding the "scope" of the ADR Agreement, she has herself conceded that those are reserved exclusively for the arbitrator.

In any event, Pambakian does not even address the cases pointed out in Blatt's opening brief, where the Supreme Court and the Ninth Circuit have repeatedly affirmed that arbitration provisions like the ones in this ADR Agreement, which require the parties to arbitrate "all claims or controversies involving or in any way concerning [Pambakian's] application with, employment with, or termination from, the Company" and expressly extends to "tort" claims, are broad, far-reaching, and to be interpreted to the broadest possible scope. Mot. at 8–9 (citing ADR Program ¶2; ADR Agreement ¶1). There is only one reasonable interpretation of these broad provisions: The parties intended the ADR Agreement to cover *all* employment-related claims involving *all* of Match's "former, current and future officers, directors, and employees." Agreement ¶1. Blatt is undoubtedly an intended third-party beneficiary of these terms: He was both a current director and a former CEO of Match when the Agreement was executed, Blatt Decl. ¶¶ 2–3, and his claims against

---

[7] In any event, *Victoria* is not on point. Although the plaintiff in *Victoria* certainly could not have anticipated the brutality she would experience at the nursing home, Pambakian could have—and should have—expected that when she filed a lawsuit against her employer about the terms of her compensation while still an employee, and consequently attempted to spin that lawsuit in her favor in the press, she would be subject to the Agreement.

10

Pambakian and Rad are deeply intertwined with Pambakian's employment with Match.

Blatt's defamation claim is based on a scheme by Pambakian to enhance the value of her Tinder options—options that were issued as part of Pambakian's employment with Match—by making false statements about Blatt, Match's CEO. This scheme and Pambakian's defamatory statements plainly involve or concern Pambakian's employment with Match. Pambakian offers no retort to these arguments. Nor could she where she has already conceded that the ADR Agreement covers claims involving the valuation of her and Rad's Tinder options, Plaintiff's RJN, Ex. 2, and where she acknowledges that the gravamen of Blatt's suit is her and Rad's conspiracy to publicize information to benefit them in that same valuation lawsuit, Opp. at 2:11–14, 7:8–8:18 (Pambakian's summary of this lawsuit).  Contrary to Pambakian's argument, these clams are *exactly* the types of claims that the parties intended would be arbitrated.  Furthermore, Pambakian does not even address ***any*** of Blatt's cases applying arbitration agreements just like the ADR Agreement here to defamation suits like this one. *See* Memorandum of Points and Authorities in Support of Motion to Compel Arbitration and Stay Litigation ("Mot."), ECF No. 19-1, at 8 (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999); *Zolezzi v. Dean Winter Reynolds, Inc.*, 789 F.2d 1447, 1450–51 (9th Cir. 1986); *Balun v. Tesla Motors, Inc.*, 2019  WL 2635903, at *4–5 (W.D. Wash. June 27, 2019)).

**C.     The ADR Agreement Is Neither Procedurally Nor Substantively Unconscionable.**

Pambakian also argues that the ADR Agreement should be deemed unenforceable as unconscionable. Judge Birotte has already rejected this argument with respect to this same ADR Agreement. *Sanfilippo*, 2018 WL 6681197, at *5 ("There is nothing to support Plaintiff's claim that the ADR Agreement is unconscionable under California law."). That decision should be followed.

11

A contract is unconscionable, and therefore unenforceable, only if it is ***both*** procedurally and substantively unconscionable. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 236, 247 (2012); *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 963 (9th Cir. 2012) ("No matter how heavily one side of the scale tips, both procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." (citing *Armendariz v. Foundation Health Psychare Servs.*, 24 Cal. 4th 83, 114 (2000))). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise." *Pinnacle Museum*, 55 Cal. 4th at 246. Substantive unconscionability relates to "the fairness of the agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* Here, the ADR Agreement is not substantively or procedurally unconscionable.[8]

### 1.    The ADR Agreement is not procedurally unconscionable.

Contracts are procedurally unconscionable only if they are entered into under conditions of "oppression or surprise." *Pinnacle Museum*, 55 Cal. 4th at 246–47. Here, Pambakian's claims of oppression and surprise are unsupportable.

When Match instituted its Alternative Dispute Resolution Program, it emailed Pambakian to point out "the new alternative dispute resolution program," and ask her to sign the ADR Agreement, which included a summary of the relevant provisions of the Program. *See* ECF No. 19-3, Ex. 1 (Alcala Decl.) ¶¶ 5–8. The two-page ADR Agreement was separated from all other Match policies, and began with a bold, capitalized, and underlined heading. *See id.*; *see also* ADR Agreement at 1. Further, above the signature block of the document, there is additional, bolded, all-caps language asking Pambakian to review the ADR Program and advising Pambakian of where the ADR Agreement and ADR Program will be posted. ADR Agreement at 2.

---

[8] Represented by the same legal counsel in related litigation in New York, Pambakian has already once conceded that the ADR Agreement is valid and enforceable by referencing the Agreement as the reason she withdrew from the New York Lawsuit seventeen days after it was filed. Plf RJN, Ex. 2. Pambakian's inconsistency on this point severely undermines the credibility of her unconscionability arguments.

California courts have declined to find unfair surprise on similar facts, even where the arbitration agreement is not separately presented as it was here. *See, e.g.*, *Pinnacle Museum*, 55 Cal. 4th at 247 (no unfair surprise where arbitration provisions appeared in separate article with bold, capitalized and underlined headings); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (2005) (no unfair surprise where arbitration provisions offset with "clear heading"); *cf. Loewen v Lyft, Inc.*, 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015) ("[N]either Plaintiff can claim surprise with respect to the . . . the arbitration clause . . . , where they both assented to the terms of the TOS by clicking 'I agree' [and] the terms of the TOS were displayed on the screen, [and] Plaintiffs had the opportunity to scroll through the terms prior to assent"). And Pambakian's argument that the ADR Agreement did not "make clear" what was being agreed to is entirely unpersuasive.

The circumstances under which Pambakian signed the ADR Agreement did not involve "oppression," as she claims. It is not enough to claim that the ADR Agreement was a "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113. Pambakian must show more than lack of negotiation to establish that the contract is procedurally unconscionable. *See Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 769 (1989) (rejecting the proposition that a contract not subject to negotiation, without more, is procedurally unconscionable). Pambakian does not show "more" here. Pambakian's passing reference to *OTO, LLC v. Kho*, 8 Cal. 5th 111 (2019), is entirely unpersuasive, given that the plaintiff there, a service technician who did not speak English as his primary language and was forced to sign a form while his employer waited nearby, is in an entirely different position than Pambakian, a well-paid and well-counseled senior executive who routinely negotiated the terms of her employment. *See id.* at 118; *see also* FAC ¶¶21, 85–87.

6915052v1/016409

Pambakian presents no evidence that she would have suffered any adverse employment action by refusing to sign. *See Poublon*, 846 F.3d at 1262 ("[T]here is no evidence in the record that C.H. Robinson ever stated or suggested that Poublon would be fired for failing to sign the agreement"). To the contrary, her claim is that she did not know what she was signing or seek any more information about it before signing it. These facts do not show her signature was not voluntary, or that the ADR Agreement was unconscionable.

Pambakian had ample opportunity to review the ADR Agreement and ADR Program, and she had a "responsibility to read the contract before having signed it, and to have it explained to [her] if [s]he did not understand it." *Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 724 (N.D. Cal. 1996). She was a senior executive at Tinder, where she had leverage to negotiate—and did, in fact, negotiate—the terms of her employment and compensation from base salary to the size of equity awards and even renegotiating the specific terms of equity awards previously approved and granted. FAC ¶¶21, 85–87. Moreover, the timing and circumstances by which Pambakian signed the ADR Agreement support Blatt's position, not Pambakian's.[9] That Pambakian had already hired a lawyer in May 2017 in connection with Match's investigation only undercuts her argument that she did not and could not have obtained legal counsel in January 2018 when reviewing the ADR Agreement some eight months later. Pambakian's insistence that she "had no opportunity to negotiate terms" is flat out wrong.

Pambakian further argues that the ADR Agreement is procedurally unconscionable because, even if it incorporates AAA rules, it does not attach a copy

---

[9] Pambakian implies that Match singled her out to sign the ADR form "only *after* Pambakian reported Blatt's sexual assault to Match, *after* she refused to sign an NDA, and *after* she told Match she wanted to consult a lawyer about Blatt's assault." Opp. at 17. Nothing could be further from the truth. Match asked all its employees to sign the ADR forms and other Match policies. *See* ECF No. 19-3 (Alcala Decl.), ¶7. And it was Sean Rad, not Pambakian, who raised the holiday party incident to Match executives. Pambakian, on the other hand, actively tried to stop the investigation. FAC ¶6.

14

of the AAA rules and is ambiguous about which set of rules governs. *See* Opp. at 19. Given that the AAA rules are expressly referenced in the ADR Agreement, Pambakian's argument that the "ADR Program does not disclose 'which set of arbitration rules govern'" is unpersuasive. *See* ADR Agreement ¶6 (providing that arbitration will proceed "in accordance with the applicable arbitration rules and procedures of the American Arbitration Association (AAA) or another alternative dispute resolution (ADR) provider selected by the parties."). That the parties could select another set of ADR rules does not mean that the selection of the AAA rules is ambiguous.

Courts have repeatedly held that the failure to attach rules that are incorporated by reference in the agreement, while creating a minor inconvenience to the parties, does not render the agreement procedurally unconscionable. *See Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) ("[T]he failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability."); *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932 (N.D. Cal. 2012) (employer's failure to provide employee copy of AAA rules did not render agreement procedurally unconscionable because incorporation of rules was clear and rules were readily available); *Howard v. Octagon, Inc.*, No. 13-cv-01111 PJH, 2013 WL 5122191, at *16 (N.D. Cal. Sept. 13, 2013) (same).

Furthermore, California law ordinarily permits contracts to incorporate other documents by reference. *See, e.g., Poublon*, 846 F.3d at 1269. As the Supreme Court has explained, the FAA preserves only "generally applicable contract defenses," and does not permit states to apply rules specific to arbitration that "stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). Thus, a holding that an arbitration agreement (unlike any other contract) may be invalidated for incorporating documents by reference violates the FAA. *See Fardig v. Hobby Lobby Stores, Inc.*, No. SACV 14-561-JVS (ANx), 2014 WL 2810025, at *5 (C.D. Cal. June 13, 2014) (reasoning that the argument that

15

an arbitration agreement is unconscionable unless it attaches applicable rules may violate Concepcion).  Pambakian's arguments are therefore unavailing.

### 2.        The ADR Agreement is not substantively unconscionable.

Pambakian also cannot prove the high level of substantive unconscionability necessary to render the ADR Agreement unenforceable. *Armendariz*, 24 Cal. 4th at 114. "Substantive unconscionability concerns the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'" *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003). Arbitration clauses providing for disputes to be decided by neutral arbitrators are a standard feature of contracts, freely entered into by sophisticated parties thousands of times every day. They are not unconscionable in any sense of the word.

Moreover, the arbitration provision at issue here is not one-sided. The agreement to arbitrate is ***mutual***, and the arbitration is governed by the neutral and commonly used AAA rules and procedures, which favor neither party. The ADR Agreement also includes provisions designed to alleviate burdens on Pambakian, including providing that Pambakian is not responsible for paying the arbitrator's fee. Nor does the ADR Agreement restrict any substantive right available to Pambakian only in a court of law. Because the arbitration provisions are neither unduly harsh nor one-sided, Pambakian cannot show the substantive unconscionability required to defeat enforcement of the provisions.

Pambakian makes three arguments purporting to support her position that the ADR Agreement is substantively unconscionable but none of these provisions comes close to meeting Pambakian's burden to show the ADR Agreement is so one sided as to shock the conscience.

***First***, the ADR Agreement's provision permitting Match, and not Pambakian, to amend the ADR Agreement does not render the ADR Agreement unconscionable. Under the ADR Agreement, Match must give employees 14 days' notice of any changes and any change "will not apply to any claim that has already been filed."

16

ADR Agreement ¶16.3. Under California law, a contract that may be amended by one party upon reasonable notice to the other party is not unconscionable, because the party retaining the power to amend must exercise that power in accordance with the covenant of good faith and fair dealing. *Casas v. Carmax Auto Superstores California LLC*, 224 Cal. App. 4th 1233, 1237 (2014). "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016). Thus, a unilateral modification provision does not render a contract unconscionable. *See Poublon*, 846 F.3d at 1269.

In support of her argument, Pambakian cites two cases. *See* Opp. at 21. Both are inapposite. One of the cases, *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425 (2012), applied Texas law rather than California law to the question whether a unilateral amendment provision voided an arbitration agreement. *Id.* at 1447. Texas courts disavowed the decision within months, because it ignored and misapplied Texas cases permitting unilateral amendment provisions. *Nabors Drilling USA, LP v. Pena*, 385 S.W.3d 103, 109 (Tex. App. 2012) ("*Peleg* is not controlling, and we respectfully disagree with its analysis of Texas law."). The other case Pambakian cites, *Ingle v. Circuit City Stores*, 328 F.3d 1165 (9th Cir. 2003), is no longer good law on this issue because it applied a presumption of substantive unconscionability that is irreconcilable with *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). *See Ingle*, 328 F.3d at 1174 n.10; *Knatt v. J. C. Penney Corp., Inc.*, 2016 WL 1241550, at *3 (S.D. Cal. Mar. 30, 2016) (declining to follow *Ingle* in light of *Concepcion*). In fact, the arbitration agreement at issue in *Concepcion* included a unilateral amendment provision. 563 U.S. at 336.

***Second***, Pambakian cites no authority for the proposition that delegating enforcement questions to an arbitrator is unconscionable. Rather, she urges only that Blatt's argument in favor of delegation deviates from the express terms of the ADR

17

Agreement. As discussed *supra* at II.A.1, Pambakian is wrong. To the extent Pambakian argues that Blatt's argument seeking enforcement of the contract renders the contract unconscionable, she cites no authority for this proposition. *See A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982) ("substantive unconscionability must be evaluated as of the time the contract was made"). At any rate, courts repeatedly uphold delegation provisions. *See, e.g.*, *Schein*, 138 S. Ct. at 527; *Oracle Am., Inc.*, 724 F.3d at 1074.

*Third*, Pambakian alleges that the ADR Agreement carves out judicial resolution of claims that Match is more likely to possess, such as misappropriation and other intellectual property claims. But the ADR Agreement includes no such provision. Rather, the ADR Agreement simply incorporates, and provides examples of, the right to emergency injunctive relief available under California Civil Procedure Code § 1281.8. The California Court of Appeal expressly rejected the argument that the incorporation of the rights provided under section 1281.8 is substantively unconscionable. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1247–48 (2016); *see also Wu v. JPMorgan Chase Bank, N.A.*, No. LACV1900363JAKSKX, 2019 WL 4261880, at *11 (C.D. Cal. Aug. 5, 2019) (a provision allowing emergency injunctive relief is not substantively unconscionable). Accordingly, Pambakian's argument regarding a one-sided carveout is unpersuasive.

### D.   Blatt Did Not Breach the ADR Agreement.

Pambakian next argues that Blatt cannot enforce the ADR Agreement because, according to Pambakian, Blatt breached it by (1) filing his complaint against Pambakian in federal court, (2) pursuing a consolidated arbitration demand with Match and IAC against Pambakian rather than filing individually, and (3) making his arbitration demand public. *See* Opp. at 23–24. Pambakian is wrong.  Blatt has not breached the ADR Agreement.

Pambakian ignores the procedural history of this case, which explains clearly why Blatt pursued his claims against Pambakian and Rad in federal court ***and*** in an

18

arbitral forum. Blatt filed a demand for arbitration on the **same day** he filed this lawsuit, knowing that he would likely need to move to compel arbitration in court. Bhatia Decl. ¶3. Of course, he was correct: Pambakian continues to insist that her claims belong in court rather than arbitration, resulting in this motion practice. Had Blatt filed exclusively in an arbitral forum and had the arbitrator determined that certain claims were not arbitrable, then Blatt's only recourse would have been federal litigation, and by that time, the limitations period for his defamation and conspiracy claims may have expired. Moreover, no matter what decision the Court or arbitrator reached regarding the arbitrability of Blatt's claims, Blatt understood that he would have to pursue his claims against Rad in federal court given that Rad was not a counter-signatory to the ADR Agreement.[10] Pambakian knows all this but tries to spin the facts in her favor; it is unpersuasive.

Pambakian's reliance on *Brown v. Dillards, Inc.*, 430 F.3d 1004 (2005), is also misplaced. In *Brown*: (a) the employee instituted arbitration proceedings; (b) the employer improperly "refused to participate in the arbitration process at all"; (c) after the employer's indefensible refusal to arbitrate, the employee was forced to file suit in court regarding the same claims; and (d) the employer sought to compel arbitration of the lawsuit. *Id.* at 1010. Here, Blatt filed his arbitration demand on the **same day** that he filed the complaint in this case. He has never once refused to arbitrate his claims against Pambakian and instead has repeatedly insisted that Pambakian do so in this case and in the Pambakian Lawsuit.

---

[10] Pambakian faults Blatt for failing to compel Rad to arbitration even though Rad, a former Tinder officer, also "'gets the benefit' of the arbitration agreement." Opp. at 11 n.2. Pambakian fails to appreciate that the Ninth Circuit applies a different standard when the party resisting arbitration is a signatory (Pambakian), rather than a non-signatory (Rad). *See Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 831 (N.D. Cal. 2008) ("[I]t matters whether the party resisting arbitration is a signatory or not." (quoting *Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003)). "Arbitration is more likely to be attained when the party resisting arbitration is a signatory." *Id.* In any event, if Rad wants to participate in the arbitration, Blatt will not object.

19

Any prejudice that Pambakian incurred by the filing of this Complaint is attributable to Pambakian, not Blatt. For *weeks* after Pambakian filed the Pambakian Lawsuit, Pambakian's counsel in the Pambakian Lawsuit refused to meet and confer regarding this Motion to Compel. Bhatia Decl. ¶¶4, 6. Indeed, this was despite efforts on Blatt's counsel's part to meet and confer on this motion on at least August 22, September 22–23, and September 24, 2019. Bhatia Decl. ¶¶4, 6.  Moreover, it was only when Pambakian's counsel in this lawsuit told Blatt that Pambakian intended to file the currently pending anti-SLAPP motion that Blatt informed counsel that he intended to file an amended complaint, supplementing it with additional facts and documents that had since been unsealed in the New York Lawsuit, of which Pambakian's counsel in this lawsuit is also a part.[11] Bhatia Decl. ¶8. Blatt likewise filed an amended demand for arbitration setting forth these same allegations. Bhatia Decl. ¶10. Given the timing of these events, Blatt filed his motion to compel arbitration of Pambakian's claims as early as practicable.

Pambakian's suggestion that Blatt "affirmatively used this court action to advance his legal attack on Pambakian" is, of course, ironic, since Pambakian has wrongly attempted to use the hook of her 17-day participation in the New York action as the excuse for her defamatory attack on Blatt. But, in any event, it is completely disconnected from reality. Blatt has not sought to take advantage of filing suit in federal court. There has been no discovery in this lawsuit. Nothing has happened in this case, other than motion practice to determine whether the case should proceed in federal court or in arbitration. And unlike Defendants, who have repeatedly filtered non-legal documents to the media and granted multiple interviews to various media outlets, Blatt did not give a single media interview in the weeks after filing his lawsuit or the amended Complaint. Blatt has always sought to resolve his dispute with Pambakian in arbitration, as contemplated by the ADR Agreement.

---

[11] The additional details uncovered in those documents also relate to Blatt's claims against Rad, so Blatt would have amended his Complaint regardless of whether his claims against Pambakian were subject to arbitration.

20

Pambakian next insists that Blatt breached the ADR Agreement by filing a "consolidated" arbitration demand with Match and IAC. But the whole point of the ADR Agreement was to require that claims involving the company and its executives be arbitrated. It is therefore entirely consistent with the ADR Agreement for arbitration demands to be filed jointly. In any event, Pambakian cites no authority in support of her position. Opp. at 24. Section 2 of the ADR Agreement only prohibits claims from being arbitrated as "a class, consolidated, collective, or representative action . . . unless agreed to by all parties in writing." The provision plainly does not apply here, where Pambakian herself elected to sue all three parties in a single action in federal court in the Pambakian Lawsuit. *See* ADR Agreement ¶2. Pambakian's attempt to shoehorn the facts of this case into Paragraph 2 of the ADR Agreement, plainly meant to apply to class-action arbitration, is not persuasive.

Finally, Pambakian contends that Blatt breached his "confidentiality obligations" by "publicly filing his arbitration demands in connection with this Motion." Opp. at 24. This argument is frivolous. The arbitration demands were filed solely as exhibits and contain no information not already made public in the publicly filed complaints. Although it is Pambakian's burden to justify any sealing request (which, of course, she has not brought), Pambakian to date still has not provided any reason why such information should be sealed, even after multiple meet and confers on these very topics. Moreover, we must not forget why we are here: Pambakian has repeatedly defamed Blatt in the media. She has given interviews, not limited to those at issue in this case, shared documents, and pursued a coordinated media strategy along with her co-conspirator, Sean Rad. That Pambakian would now argue that Blatt breached the ADR Agreement by attaching the arbitration demand to his motion to compel arbitration is ludicrous.

In any event, the ADR Agreement itself does not even have a confidentiality provision. The AAA rules incorporated into that ADR Agreement impose confidentiality on the arbitrator, not the parties. *See Melez v. Kaiser Found. Hosps.,*

21

*Inc.*, No. 2:14-CV-08772-CAS, 2015 WL 898455, at *11 (C.D. Cal. Mar. 2, 2015) ("[T]he AAA Rules state only that '[t]he arbitrator shall maintain the confidentiality of the arbitration....' … [A] rule imposing a duty of confidentiality on the arbitrator does not raise the same risks as a rule imposing such a duty on the parties …." (second and third alterations in original)). So Pambakian is simply wrong about the facts and the law, and if anyone is in breach here, it is Pambakian.

### E.   Blatt Did Not Waive His Right to Compel Arbitration.

Pambakian's arguments as to waiver fail for largely the same reasons as her arguments as to breach. Pambakian argues that Blatt waived his right to compel arbitration by filing suit, but she ignores that Blatt *also* filed an arbitration demand. There was, and could be, no waiver in these circumstances. Courts repeatedly hold that the mere filing of a suit in court does not waive the right to arbitration, unless the filer has used the machinery of the courts to an unfair advantage before seeking to compel arbitration. That has not happened here.

The case Pambakian cites, *Steiner v. Horizon Moving Systems, Inc.*, 2008 WL 4822774, at *3 (C.D. Cal. Oct. 30, 2008), is distinguishable on this basis. In *Steiner*, the plaintiff sought to compel arbitration nearly a year after filing her suit and only after losing her motion to remand the case to state court. The district court rejected this transparent attempt at forum shopping. *Id.* Blatt, on the other hand, has never wavered in his intention to have his claims with Pambakian heard in the proper arbitral forum. *See also, e.g.*, *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999) ("[T]he filing of a complaint, an answer, a counterclaim or a third party complaint does not waive the right to pursue arbitration."); *Paxton v. Macy's W. Stores, Inc.*, No. 118CV00132LJOSKO, 2018 WL 4297763, at *11 (E.D. Cal. Sept. 7, 2018) (removing case, taking limited discovery, and then moving to compel arbitration without seeking any other relief on the merits does not waive right to arbitration); *Jurado v. Schutz 655 LLC*, No. 216CV05996CASRAOX, 2017 WL 600076, at *4 (C.D. Cal. Feb. 13, 2017) (filing an answer and removing case did not

22

constitute waiver of right to compel arbitration).  Pambakian's decision to file an anti-SLAPP motion rather than simply oppose this motion to compel and await the outcome is her choice.  Any costs she incurred for this decision are hers alone to bear.

## III.   **CONCLUSION**

By the plain language of the ADR Agreement, Blatt's claims against Pambakian should go straight to an arbitrator. But, even if the Court were to decide the enforceability questions presented in Pambakian's Opposition, Blatt's motion should be granted. Paragraph 1 of the ADR Agreement establishes that he is a third-party beneficiary, and nothing about the terms or circumstances under which the ADR Agreement was signed suggests that it is procedurally or substantively unconscionable. Blatt did not breach or waive his rights to enforce the agreement by filing simultaneously in federal court and an arbitral forum. Blatt therefore respectfully requests that Pambakian be compelled to adhere to her agreement and defend the claims against her in arbitration.

Dated: October 21, 2019

DAVIDA BROOK
VINEET BHATIA
LORA J. KRSULICH
SUSMAN GODFREY L.L.P.

By: /s/ *Vineet Bhatia*
Vineet Bhatia

ATTORNEYS FOR PLAINTIFF
GREGORY BLATT

23