# Exhibit 1

Electronically FILED by Superior Court of California, County of Los Angeles on 08/05/2019 09:40 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk
19STCV27416

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Stephen Goorvitch

M. Elizabeth Graham, CA 143085
Grant & Eisenhofer, P.A.
101 California Street, Suite 2710
San Francisco, California 94111
Phone: (415) 365-9585
Fax: (415) 365-9650
Email: egraham@gelaw.com

*Additional Counsel for Plaintiff on
Signature Page*

# IN THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| ROSETTE PAMBAKIAN,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY BLATT,<br>IAC/INTERACTIVE CORP. and<br>MATCH GROUP, INC.<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>(1) Negligence<br>(2) Intentional Infliction of Emotional Distress<br>(3) Sexual Battery (Civ. Code § 1708.5)<br>(4) Gender Violence (Civ. Code § 52.4)<br>(5) Ralph Act Violation (Civ. Code § 51.7)<br>(6) Negligent Misrepresentation<br>(7) Wrongful Termination (Labor Code § 1102.5)<br>(8) Retaliation for Engaging in Protected Activity (Gov. Code § 12940)<br><br>**JURY TRIAL DEMANDED** |

1       Plaintiff Rosette Pambakian, ("Plaintiff") by her attorneys, files this Complaint

2    seeking judgment against Defendants GREGORY BLATT (hereinafter, "Defendant

3    Blatt"), IAC/INTERACTIVE CORP. (hereinafter, "IAC") AND MATCHGROUP,

4    INC. (hereinafter, "Match Group" or "Match") (collectively, "Defendants") for

5    claims arising from a sexual assault perpetrated by Defendant Blatt on

6    Ms. Pambakian while both were employed at Tinder, Inc., the subsequent cover-up

7    by Defendants, and the retaliatory wrongful termination of Ms. Pambakian, and

8    alleges as follows:

9              **I.    SUMMARY OF CLAIMS**

10      1.    This case is about the abuse of the personal rights and well-being of

11    Plaintiff, Rosette Pambakian, a successful marketing executive, by an insidious

12    corporate culture that emphasized profit at all costs.   Plaintiff was one of the earliest

13    executive hires and the longest standing female executive at the dating app Tinder,

14    until her retaliatory termination in 2018.   While at an outside public relations agency,

15    Plaintiff spearheaded the launch of Tinder in 2012.  In 2014, she officially joined the

16    company as Tinder's Head of Communications, where she was essential to building

17    the company from its early startup phase into the world's most popular dating app, a

18    multi-billion dollar enterprise and technology innovator.

19      2.    Plaintiff has been credited as an integral part of Tinder's success.

20    Several Tinder founders have commented that Tinder could not have gotten where it

21    did without the expertise and dedication of Plaintiff.  When parent company Match

22    marked its IPO in November 2015, due in large measure to the success of Tinder,

23    Ms. Pambakian was invited to the NASDAQ trading floor for the ceremonial ringing

24    of the bell.  She was named one of the 40 under 40 by PR Week, one of Refinery 29's

25    Top Women in Tech, and included in Cosmopolitan Magazine's Millennial Power

26    List, all for her work at Tinder. Plaintiff's career was on the rise until she was

27    sexually assaulted by the CEO of Match Group and Tinder, Gregory Blatt.

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

3.      Before stepping in, and while serving as, interim CEO of Tinder, Defendant Blatt was also the CEO and Chairman at Match Group.  Match Group and its parent company IAC (hereinafter, "Company Defendants"), owned Tinder.  However, when Defendant Blatt and his team arrived at Tinder, they brought IAC and Match Group's misogynistic culture with them.

4.      Defendant Blatt has a reputation for being a notorious bully, known for volatile outbursts and vindictive retribution.  Plaintiff endured Defendant Blatt's inappropriate behavior throughout their working relationship, culminating in December 2016 when he physically and sexually assaulted Plaintiff.

5.      As soon as the Company Defendants became aware of Defendant Blatt's assault and the events leading up to it, including the cultivation of a harassing work environment that rewarded men like Defendant Blatt, the Company Defendants began a campaign to cover up the assault and disparage Plaintiff.  Indeed, a meaningful "investigation" of Plaintiff's complaint about Defendant Blatt's assault, which was required under IAC and Match company policies, and California law, never occurred.  The Company Defendants failed to interview a key eyewitness and ignored damning facts, because the Company Defendants did not want to risk their bottom line.  Rather, Plaintiff was marginalized, subject to additional harassing, offensive, and insulting behavior, put on administrative leave, publicly accused of consenting to her attacker's advances, and finally, wrongfully terminated by Defendants.

## II.      PARTIES

6.      Plaintiff is an individual who was and is at all times relevant to the claims alleged herein, a resident of Los Angeles County, California.  At all times relevant to the claims herein, Plaintiff was employed and worked at Tinder headquarters in Los Angeles, California.

---

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

7.      Tinder, Inc. ("Tinder), at all times relevant to the claims alleged herein, was a Delaware corporation with its principal place of business in Los Angeles, California.  From March 11, 2013 to July 13, 2017, Tinder was a Delaware corporation owned by Match Group.  On July 13, 2017, Match Group merged Tinder into itself.  On information and belief, Match Group assumed all of Tinder's liabilities and obligations, including those arising from Plaintiff's sexual assault, the inadequate investigation of Plaintiff's complaints about the assault, and Defendants' subsequent attempts to cover up both the events giving rise to Plaintiff's complaints and Plaintiff's complaints themselves.

8.      Defendant Gregory Blatt is an individual, who at all times relevant to the claims alleged herein, was employed by Defendant Match Group and maintained an office at Tinder headquarters in Los Angeles, CA.

9.      Defendant IAC, is, and at all relevant times mentioned herein was a corporation organized under the laws of the State of Delaware.  At all relevant times mentioned herein, IAC's primary place of business was located in New York, New York.  IAC owns or controls Match Group, Inc.

10.      Defendant Match Group is, and at all relevant times mentioned herein, was a corporation organized under the laws of the State of Delaware.  At all relevant times mentioned herein, Match Group's primary place of business was located in Dallas, Texas.  Before Match became a public company on November 19, 2015, it was a wholly owned subsidiary of IAC.  Since November 19, 2015, IAC has owned a majority of Match Group's outstanding shares.

### III.    JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10.  Plaintiffs seek damages under the statutory and common law of the State of California.

1      12.    Venue is proper in this Court pursuant to California Code of Civil

2   Procedure § 395 because (a) some of the acts and transactions described herein

3   occurred within this county, including Plaintiff's employment with Defendants, the

4   sexual assault of Plaintiff,  the resulting "investigation," and ultimate termination of

5   Plaintiff; (b) some Defendants are or were registered to do business in the State of

6   California and/or are or were doing business within this county; and (c) Defendants

7   did do business in this county by operating and/or exercising complete control over

8   the operations of the company formerly known as Tinder, Inc.

9       **IV.   FACTS COMMON TO ALL CAUSES OF ACTION**

10  **A.    Defendant Blatt's Sexual Assault of Plaintiff**

11      13.    In December 2016, Plaintiff was the longest standing (and one of the

12  only) female executives at Tinder.  Plaintiff held the executive position of Vice

13  President of Global Communications and Brand.  Her role eventually expanded to

14  Head of Marketing and Communications, managing an in-house group of more than

15  40 people, as well as external agencies and consultants.  Publicly, she served as the

16  face of the brand on panels and in the press.

17      14.    During all events described herein, Defendant Blatt was the CEO and

18  Chairman of Match Group, as well as the CEO of Tinder, and directly in charge of

19  Plaintiff.

20      15.    On December 9, 2016, Tinder held its holiday party at the SLS Hotel in

21  Beverly Hills Hotel, in Los Angeles, California.  Plaintiff attended the party.  Several

22  Tinder employees had rooms at the hotel, paid for by Tinder, including Witness No.

23  1, Defendant Blatt's Executive Assistant.

24      16.    At the party, Defendant Blatt approached Plaintiff and said to her in a

25  lewd voice, in sum and substance, "I get hard every time I look at you" and "Let's get

26  out of here."  Plaintiff was stunned.   Defendant Blatt's conduct was so aggressive

27  that Plaintiff feared that Defendant Blatt might actually act on it.  Plaintiff quickly

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

walked away from Defendant Blatt, found a colleague and close friend, Witness No. 2, and went upstairs to friend and colleague, Witness No. 1's hotel room, in an attempt to distance herself from Defendant Blatt.

17.     Plaintiff, Witness No. 1 and Witness No. 2, were upstairs in Witness No. 1's hotel room at approximately 2:00 AM when, Defendant Blatt texted Witness No. 1. Plaintiff asked Witness No. 1 not to tell Defendant Blatt where they were. Several minutes later, there was a knock at the door. Witness No. 1 answered the door and Plaintiff saw that Defendant Blatt had arrived at the room. When Defendant Blatt arrived, Plaintiff was sitting on the bed.

18.     Immediately upon entering the room, Defendant Blatt went straight for Plaintiff who was sitting on the bed. Defendant Blatt climbed on top of Plaintiff and pulled her backwards so that Plaintiff was lying beside him with his arm draped over Plaintiff. Defendant Blatt then began forcibly groping Plaintiff's breasts and upper thighs, and kissing her shoulders, neck and chest—all without Plaintiff's consent. Then, Defendant Blatt said, sum and substance, "Turn off the lights." In a state of shock and disbelief, Plaintiff was also acutely aware of the subordinates in the room, and made the decision to de-escalate the situation and not cause a further scene. Plaintiff began to pull away from Defendant Blatt and said, in sum and substance, "Ok, we are all hungry; I'm going to order food." Defendant Blatt then removed his hands from Plaintiff enabling her to stand up.

19.     Plaintiff, Defendant Blatt, Witness No. 1 and Witness No. 2 remained in Witness No. 1's room waiting for the food to arrive. At some point after the food was ordered, Defendant Blatt again pushed Plaintiff onto the bed and began groping her and attempting to kiss her. While again attempting to end Defendant Blatt's unwanted sexual contact and remove herself from his immediate proximity, Plaintiff announced it was time to leave. Witness No. 1, begged Plaintiff not to leave her alone with Defendant Blatt. Plaintiff and Witness No. 2 waited until Defendant Blatt

1   left in his car service to request separate Ubers and went to the lobby to await their

2   respective rides.

**B.     The Aftermath of Blatt's Assault**

4        20.     Defendant Blatt was the CEO of Tinder, the Chairman and CEO of

5   Match Group, and Plaintiff's boss.  Plaintiff knew that Defendant Blatt was a

6   powerful man, a long-time executive at Match Group and IAC, and feared retaliation

7   and the loss of her job at Tinder.  Plaintiff's fears were based on Defendant Blatt's

8   reputation for openly behaving inappropriately toward women without any

9   consequences.  Defendant Blatt seemed untouchable.

10        21.     Plaintiff feared damage to her reputation and a change in how she would

11   be perceived by her subordinates and colleagues if her assault were made public.

12   Plaintiff also feared damage to Tinder's business, which she had worked years to

13   build.

14        22.     The morning after the sexual assault, Plaintiff asked Witness No. 1 and

15   Witness No. 2 not to share what had happened with anyone.

16        23.     Two days after the assault, Defendant Blatt called Plaintiff into his

17   office and apologized profusely for his actions the night of the holiday party.  Faced

18   with the reality that she would have to continue to work with and be supervised by

19   Defendant Blatt—the new CEO of Tinder—and scared of the consequences to her

20   working relationships and reputation if the sexual assault were made public, Plaintiff

21   and Defendant Blatt agreed to quash the incident and not to speak of it again.

**C.     Plaintiff Reported the Assault to Her Supervisor**

23        24.     Several days after the sexual assault, Plaintiff attended a Tinder/Match

24   Communications Team Dinner.  Also present was Vice President of Public Affairs

25   for Match Group, Matt David, to whom Plaintiff also reported.  At all times relevant

26   herein, Mr. David reported directly to Defendant Blatt.

27

28

25.     During this dinner, Plaintiff told Mr. David about the sexual assault. Plaintiff felt that it was necessary to report Defendant Blatt's actions to Mr. David both because Defendant Blatt's actions were unacceptable and because she feared a potential public relations crisis as there were witnesses to the assault.

26.     In response, Mr. David said nothing.  However, Mr. David's expression was one of shock.

27.     On information and belief, rather than comply with the obligations placed on him to report any such complaints to Human Resources, Mr. David did not report Defendant Blatt's misconduct to Human Resources.

**D.     The Company Defendants' Inadequate and Biased "Investigation" Amounts to a Cover-Up of Defendant Blatt's Misconduct**

28.     On information and belief, Sean Rad, former Tinder CEO and then-Tinder Chairman, began hearing rumors of Defendant Blatt's disturbing behavior toward Plaintiff at the Holiday Party from multiple sources, including indirectly from Witness No. 1.  Mr. Rad took Plaintiff aside, told her that he heard something happened at the holiday party, and asked her if there was anything she wanted to tell him.  Plaintiff relayed to Mr. Rad what Defendant Blatt said to her at the holiday party and how he assaulted her in Witness No. 1's hotel room.

29.     On information and belief, Mr. Rad reported Defendant Blatt's sexual assault of Plaintiff to Gregg Winiarski, Executive Vice President and General Counsel of IAC, Joey Levin, CEO of IAC, and Jared Sine, Chief Legal Officer of Match Group.  On information and belief, Mr. Rad also discussed the incident with Lisa Nelson, Chief Human Resources Officer at Match Group and Tinder.  On information and belief, Ms. Nelson told Mr. Rad that she was contemplating quitting her job because of Defendant Blatt's alleged behavior.  On information and belief, Mr. Rad thereafter learned that there would be an investigation and that Mr. Sine and

1   Ms. Nelson would be running it.  Both of these individuals reported directly to

2   Defendant Blatt.

3       30.   On information and belief, Mr. Rad expressed his fears that the

4   investigation was biased, because two executives who reported directly to Defendant

5   Blatt, the subject of the investigation, were in fact in charge, but his concerns fell on

6   deaf ears.

7       31.   On information and belief, after Mr. Rad reported Defendant Blatt's

8   assault, Mr. Rad started receiving threats from Match executives that if he did not

9   stop pursuing the investigation into Defendant Blatt's misconduct he would face

10   retribution.

11       32.   Mr. Rad pressed Tinder and Match Board members for a meeting of

12   Tinder's Board of Directors to discuss Defendant Blatt's assault on Plaintiff, to no

13   avail.  On information and belief, Defendant Blatt emailed the board members and

14   discouraged them from speaking to Mr. Rad.

15       33.   On information and belief, Matt Cohler, a General Partner of

16   Benchmark and then-Tinder Board member, told Mr. Rad that there was no reason

17   for a board meeting, and that the Tinder Board could not do anything until Plaintiff

18   formally "reported" the assault—notwithstanding the fact that she already had

19   reported it to her direct supervisor (Mr. David) and Tinder's Chairman (Rad).

20       34.   On information and belief, Mr. Rad spoke with a then-Match Board

21   member, to express concern about the way Plaintiff's complaint was being handled.

22   Consistent with their corporate culture emphasizing profit over people, the Match

23   Board Member assured Mr. Rad he had nothing to worry about because, in sum and

24   substance, "everyone [was] going to make a lot of money."

25       35.   On information and belief, the Tinder Board of Directors was never

26   convened regarding Defendant Blatt's sexual assault of Plaintiff.

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

36.     On April 28, 2017 - which, on information and belief, was approximately one day after Mr. Rad reported Defendant Blatt's sexual assault of Plaintiff to Defendants IAC and Match Group executives – Defendant Blatt exercised approximately 5 million stock options in Match Group, realizing over $44 million in value.  The questionable timing of this transaction cannot be ignored, given the affect a scandal of this magnitude could have on Match Group's stock price if made public.

37.     On or about April 30, 2017, Plaintiff was approached by Lisa Nelson, Chief Human Resources Officer to discuss the sexual assault.  Plaintiff was leery of speaking with Ms. Nelson, as Plaintiff was aware that Ms. Nelson was very closely linked to Defendant Blatt, having worked with him for many years, and that she reported directly to him.

38.     Plaintiff told Ms. Nelson that she was reluctant to talk with her and wanted to ensure confidentiality out of fear of retaliation by Defendants.  Only after Ms. Nelson assured Plaintiff of the confidentiality of her statements did Plaintiff agree to speak to Ms. Nelson.

39.     When Plaintiff met with Ms. Nelson, Jared Sine, Chief Legal Officer at Match, was also present.  Plaintiff confirmed the sexual assault.

40.     On May 3, 2017, Plaintiff was asked to meet with Ed Ferguson, Vice President and Associate General Counsel at IAC, and Mr. Sine.  During this meeting, Plaintiff again recounted Defendant Blatt's assault.  Mr. Ferguson told Plaintiff that they had spoken to Defendant Blatt and he had insinuated that it was consensual.  In response, Plaintiff told the men that Defendant Blatt had approached her earlier at the Holiday Party and said, "I get hard every time I look at you," and "Let's get out of here."  She explained that she immediately walked away embarrassed, stunned, and concerned that he might actually try to act on it.  Both Mr. Ferguson and Mr. Sine expressed shock and were appalled by Defendant Blatt's actions.  Both apologized to Plaintiff for having to endure such an incident.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

41.     Just one day following her meeting with Mr. Sine and Mr. Ferguson, despite assurances of confidentiality and privacy, Defendant Blatt emailed Plaintiff and his Executive Assistant, Witness No. 1, asking both women to participate in separate video conferences with him.  Plaintiff knew in that moment that Defendants' promise of confidentiality had been violated and that information was going from Human Resources and Defendants IAC and Match Group's Legal Counsel to Defendant Blatt.

42.     Plaintiff did not respond to Defendant Blatt's email and did not attend the video conference, but, upon information and belief, Witness No. 1 did.  After the video conference, Witness No. 1 group-texted Plaintiff and Chief Human Resources Officer Lisa Nelson and told them, in sum and substance, that Defendant Blatt knew everything that they had said to Ms. Nelson and Mr. Sine.  During a phone conversation later that day, Witness No. 1 told Plaintiff that Defendant Blatt had begged her not to continue cooperating in the investigation as it would ruin his life and his family.

43.     After talking with Witness No. 1, Plaintiff responded to the group text that she did not feel comfortable talking further about what happened until she consulted with a lawyer.  Ms. Nelson responded that she understood.  After this text, Plaintiff was no longer contacted as part of the "investigation."

44.     The purported "investigation" Company Defendants conducted did not comply with either California law or their own internal policies.  The Company Defendants used the investigation as an attempt to cover-up and conceal the misconduct of Defendant Blatt.

45.     For example, Defendants' purported "investigators" failed to interview one of the two eyewitnesses to the sexual assault, Witness No. 2.  Instead, among those two eyewitnesses, Defendants only interviewed Witness No. 1 – Defendant Blatt's Executive Assistant.  As Witness No. 2 was present in the room, and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   witnessed the assault, no adequate investigation could be conducted without
2   interviewing Witness No. 2.  Furthermore, while the purported "investigation" was
3   ongoing, Defendants required Plaintiff to continue to report to Defendant Blatt.  The
4   Company Defendants also told Defendant Blatt information provided by Plaintiff and
5   other witnesses, violating promises of confidentiality.

6   46.   In or around July 2017, a reporter from Tech Crunch began asking
7   Plaintiff questions about rumors of sexual misconduct at Tinder by high-level Match
8   Group executives.  A few months later, Plaintiff learned that the same reporter was
9   still investigating, and that the story was about Plaintiff's own assault at the hands of
10  Defendant Blatt.

11  47.   Plaintiff informed Defendant Blatt and Chief Human Resources Officer,
12  Ms. Nelson, about the reporter's inquiry.  Defendant Blatt, Plaintiff's own
13  perpetrator, asked Plaintiff to talk with the reporter to explain the ways Tinder
14  combats sexual harassment, and to throw the reporter off the story.  Plaintiff refused
15  to comply with Blatt's instruction, and referred the reporter to the Head of
16  Communications at IAC.

17  48.   In or around October 2017, when it became apparent that Defendant
18  Blatt and Company Defendants could no longer get Plaintiff to say or do whatever
19  Defendants needed or wanted to cover-up the assault, they asked Plaintiff to sign a
20  non-disclosure/disparagement agreement ("NDA") concerning the sexual assault and
21  investigation, in exchange for increased compensation.  Chief Human Resources
22  Officer at Match Group and Tinder, Lisa Nelson, approached Plaintiff and said in
23  sum and substance that she and Defendant Blatt would petition the Compensation
24  Committee to increase Plaintiff's compensation if she signed the NDA.  During that
25  conversation, Ms. Nelson said to Plaintiff, in sum and substance, "We want to put
26  this terrible ordeal behind us."  Plaintiff declined to sign.

27
28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    49.    After declining to sign the NDA, Plaintiff became aware that Defendant

2    Blatt was going to resign as Tinder CEO.  During a conversation with Plaintiff,

3    Defendant Blatt, and another male executive, the male executive asked Defendant

4    Blatt what it would take to get Defendant Blatt to stay.  Defendant Blatt turned to

5    Plaintiff and said in sum and substance, "Well, you would have to sign something."

6    Defendant Blatt immediately walked it back, saying in sum and substance to Plaintiff,

7    "Never mind, I shouldn't have said that, I could get in big trouble."  It was then clear

8    that Defendant Blatt was being asked to resign because of his sexual assault of

9    Plaintiff.

10    50.    Upon information and belief, even after resigning, Defendant Blatt

11    retained his Tinder and Match Group email accounts, worked from the IAC Office

12    for several months, and appeared actively involved in Defendants IAC and Match

13    Group's business.  Defendant Blatt also continued to "check in" on Plaintiff to ensure

14    she would not speak out publicly.

15    51.    Through their actions and inaction, Company Defendants violated their

16    own internal policies.  IAC and Match Group's stated policy is to be "good corporate

17    citizen(s)" and "committed to full, prompt, and fair enforcement" of their Code of

18    Ethics.  The Code of Ethics states that, upon reporting of a violation of the Code of

19    Ethics, IAC and Match Group legal departments shall investigate all relevant facts.

20    IAC and Match Group's Code of Ethics also specifically prohibits retaliation.

21    52.    Pursuant to the Code of Ethics, "In conducting and monitoring

22    investigations, the IAC Legal Department shall consult and coordinate as appropriate

23    with senior management, the Internal Audit Department, the Human Resources

24    Department, and the Audit Committee, and shall seek to ensure that the provisions of

25    the Code of Ethics are applied and enforced consistently across the population of

26    covered persons and across IAC business."  Match Group's Code of Ethics has this

27    identical provision.

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

53.    IAC and Match Group also have a stated policy against harassment. Pursuant to this policy, "It is the policy of IAC/InterActiveCorp and its Operating Businesses and Corporate Office . . . to be committed to a workplace free of discrimination or harassment.  Harassment of applicants or employees on the basis of . . . sex, including sexual harassment, is unacceptable and will not be tolerated."

54.    IAC and Match Group's Policy defines sexual harassment as "offensive or unwelcome sexual advances, verbal comments or innuendo of a sexual nature. . . . Comments, physical touching of another person . . . may also constitute sexual harassment."  Pursuant to this policy, "Human Resources will investigate all reports of harassment promptly and thoroughly."

55.    All of these policy statements turned out to be false and misleading.

56.    The Company Defendants disregarded their stated policies when the allegations were against CEO Defendant Blatt.  Instead, they engaged in a sham investigation conducted by biased executives in an effort to conceal and discredit the sexual assault suffered by Plaintiff.   Only when faced with the fact that they could no longer keep the assault quiet, did the Company Defendants take any action.

57.    The Company Defendants were willful, wanton, reckless, negligent in overseeing and supervising and grossly negligent as a result of its employee, agent and/or servant's acts as follows:

        a.  In failing to supervise and control Defendant Blatt's sexual misconduct;

        b.  In failing to conduct an unbiased, independent, prompt, and legally compliant investigation;

        c.  In retaining Defendant Blatt as CEO for approximately 10 months after he assaulted Plaintiff;

        d.  In failing to use ordinary skill and care to protect Plaintiff; and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1        e.  In such other ways as will become evident during discovery.

2        58.    The Company Defendants' knowing acquiescence and silence with

3 respect to the known, or reasonably knowable, activities of Defendant Blatt

4 constituted a course of conduct through which Defendant Blatt's sexual assault of,

5 and retaliation against, Plaintiff was condoned, approved and authorized. The

6 Company Defendants' actions made clear that, but for the reporters learning of the

7 assault, the Company Defendants would have taken no action against Defendant

8 Blatt.

9        59.    Through the Company Defendants' failure to timely investigate

10 Plaintiff's complaint and/or reprimand and sanction the acts referenced herein, and

11 for all of the other reasons set forth in this Complaint including, without limitation,

12 their failure to take the steps necessary to prevent and/or independently investigate

13 the occurrence of such reprehensible acts, the Company Defendants ratified said

14 actions and, accordingly, are vicariously liable for the actions of Defendant Blatt.

15 **E.**    **Plaintiff's Retaliatory and Wrongful Termination**

16        60.    On August 14, 2018, Plaintiff filed a lawsuit with several others

17 regarding the valuation of her stock options, alleging in part that when Plaintiff's

18 assault was reported to Defendants IAC and Match Group executives, they failed to

19 properly investigate and take timely corrective action against Defendant Blatt.  The

20 suit alleged that the Company Defendants failed to act because they needed

21 Defendant Blatt, whom as CEO and the highest-ranking executive in charge of the

22 valuation process of Tinder, was the lynchpin in Company Defendants' scheme to

23 undervalue Tinder and decrease the amount Plaintiff and her fellow Tinder stock

24 holders would receive in exercising their stock options by billions of dollars.

25        61.    The next day, the Company Defendants placed Plaintiff on "leave."

26        62.    The Company Defendants immediately revoked Plaintiff's email

27 account—forcing incoming emails to bounce back to the sender—removed her

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   nameplate from her office door, and turned her office into a conference room.  Within

2   one month, and three months before officially terminating Plaintiff, the Company

3   Defendants hired a new Chief Marketing Officer to replace her.

4   　　　　63.　　On December 18, 2018, Plaintiff received notice via e-mail that Tinder

5   was terminating her employment.  Upon information and belief, Defendants

6   terminated Plaintiff in retaliation for speaking out against Defendant Blatt for his

7   sexual misconduct and for participating in a lawsuit against the Company Defendants

8   related to her stock options.

9   　　　　64.　　As a result of these actions, Plaintiff was forced to surrender millions of

10  dollars in equity granted to her as compensation for her work as an executive at

11  Tinder.

12  **F.　　The Company Defendants Fostered a Misogynistic Work Culture that**

13  　　　　**Promoted Sexual Harassment and Assault**

14  　　　　65.　　The Company Defendants promoted a misogynistic culture where

15  female employees were marginalized and sexually harassed on a regular basis.  From

16  the time that Defendant Blatt and other Company Defendants' executives arrived

17  from Match Group at Tinder, it became clear that their corporate culture and

18  managerial style was not respectful towards women, including Plaintiff.

19  　　　　66.　　After Defendant Blatt arrived, he quickly made it difficult for Plaintiff to

20  do her job effectively.  Because she was a young woman, Defendant Blatt treated

21  Plaintiff differently than other executives.  Despite her experience and track record as

22  a successful marketing executive, Defendant Blatt did not take Plaintiff seriously.

23  On more than one occasion when Plaintiff disagreed with him and/or addressed

24  Defendant Blatt in a professional tone in meetings,  Defendant Blatt responded by

25  asking Plaintiff to leave the meetings and come back "when [her] attitude changed."

26  　　　　67.　　On another occasion, Plaintiff was told by a fellow marketing executive,

27  that when he asked Defendant Blatt about a budget for activities to boost the

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

marketing team's morale, Defendant Blatt said: Plaintiff and two of her female team members "*were* the team morale," because in his view "they were hot." The male executives then joked about how one of the women did not count "because she had peaked" and "wasn't getting any prettier, so she needed to get married tomorrow." This is but one example of how Defendant Blatt objectified women in his employ and spread a misogynistic work culture, which promoted sexual harassment and assault.

68.     Out of a sense of responsibility to protect the company she had helped build, Plaintiff fought against Match Group's misogynistic culture, to her detriment. Behind the scenes Plaintiff fought for equal pay for the women on her team who were grossly underpaid compared to male counterparts, asked for an official pay audit to be conducted, promoted women to titles equal to male counterparts, advocated for the company to cover egg-freezing for its female employees, advocated for a more female centric approach to product development, and asked for an anonymous reporting tool be implemented by Human Resources for reporting complaints of sexual harassment within the company. Her efforts to advance women's rights within the company and on the platform were so contrary to Defendants' culture that they led to threats of violence and a covert smear campaign on Twitter by one male employee. In yet another example of how Defendants marginalized Plaintiff and emphasized profit over people, when they discovered the male employee who was responsible for a smear campaign and threats against Plaintiff, Defendants allowed him to quietly resign, rather than fire him and risk a scandal.

69.     As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, severe emotional distress. Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full

1    enjoyment of life; and/or has suffered a loss of income and/or loss of earning

2    capacity.

3            70.    Defendants and each of them, engaged in the conduct alleged herein

4    with malice, oppression, and fraud.  The conduct of Defendants, and each of them,

5    was despicable and was done with a willful and knowing disregard of the rights or

6    safety of Plaintiff.  Defendants, and each of them, knew that Defendant Blatt engaged

7    in sexual misconduct against Plaintiff, yet they continued to retain him as CEO and

8    allowed him to retaliate against Plaintiff.  Defendants' conduct was despicable and

9    subjected Plaintiff to cruel and unjust hardship in knowing disregard of her rights.

10   Their conduct was so vile, base, and contemptible that it would be looked down on

11   and despised by reasonable people.  Defendants intentionally conducted a biased

12   "investigation" of Defendant Blatt's sexual assault of Plaintiff with reckless

13   indifference toward Plaintiff's health, safety, and emotional well-being. Defendants'

14   conduct alleged herein is outrageous and so extreme that it goes beyond all possible

15   bounds of decency.  A reasonable person would regard the conduct of Defendants as

16   intolerable in a civilized community.

17   **V.    CAUSES OF ACTION**

18   <u>**FIRST CAUSE OF ACTION**</u>

19   <u>**(AGAINST DEFENDANTS MATCH AND IAC)**</u>

20   **Negligence**

21           71.    Plaintiff incorporates herein by reference, as though set forth in full, all

22   proceeding Paragraphs of this Complaint.

23           72.    Prior to the incidents, Defendants Match Group and IAC, and each of

24   them, expressly and implicitly warranted to Plaintiff that Defendants, in the event of

25   a sexual assault at the Company, would provide a thorough and unbiased

26   investigation and take immediate action to address such an occurrence.

27

28

73.   At all relevant times herein Defendant Blatt, while in the course and scope of his employment with Company Defendants, intended to cause harmful or offensive contact with intimate parts of Plaintiff, and sexually offensive contact with Plaintiff directly and indirectly resulted therefrom.

74.   At all relevant times herein, Defendant Blatt, while in the course and scope of his employment with Company Defendants, acted to cause Plaintiff to be in imminent apprehension of sexually offensive contact, and sexually offensive contact with Plaintiff directly and indirectly resulted therefrom.

75.   The Company Defendants owed to the public in general, and to Plaintiff in particular, a duty to reasonably and promptly identify, remove, and/or report to law enforcement authorities and/or to government agencies individuals who it knew, or should have known, were sexual predators in its employ.  The Company Defendants owed to the public in general, and to Plaintiff in particular, a duty to reasonably supervise and/or monitor individuals who it knew, or should have known, were sexual predators in its employ.  The Company Defendants owed to Plaintiff a duty to control the acts of their agents, servants, and/or employees.

76.   The acts and omissions of The Company Defendants complained of herein constitute negligent and reckless hiring, training, supervision, and retention of Defendant Blatt.  It was foreseeable that if the Company Defendants did not adequately exercise or provide the duty of care owed to female employees in their care, including, but not limited to Plaintiff, they would be vulnerable to sexual misconduct by Defendant Blatt.  Based on the acts alleged above, The Company Defendants knew, or should have known, that their failure to exercise due care toward Plaintiff would, and did, cause Plaintiff severe emotional distress.

77.   The Company Defendants did not have in place or failed to enforce adequate, reasonable, and necessary rules, regulations, policies, and procedures that could effectively identify, and deal with sexual predators such as Defendant Blatt.

The Company Defendants did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures for the prompt removal of sexual predators in the employ and/or service of the Company Defendants.

78.     The Company Defendants failed to fulfill their legal duty to protect Plaintiff from the sexual misconduct of Defendant Blatt and the ensuing retaliatory treatment.  These failures included the following:  (a) failure to reasonably and investigate allegations of sexual misconduct; (b) failure to properly train and instruct investigators; (c) failure to have in place and enforce standards of acceptable and unacceptable conduct; and (d) failure to designate competent investigators to evaluate complaints of sexual misconduct.

79.     Moreover, the negligent, reckless, outrageous, deliberately and recklessly indifferent and unlawful conduct of the Company Defendants, as set forth above and herein, further consisted of:

      a.   failing to properly and adequately supervise and discipline their employees to prevent the improper touching that occurred to Plaintiff;

      b.    failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of female employees, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

      c.   failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of female employees, including Plaintiff;

      d.   creating an environment that facilitated improper touching by Defendant Blatt on Plaintiff;

   e. violating their own policies and/or by-laws regarding sexual misconduct by employees and executive;

   f. ignoring, concealing, or otherwise mitigating the seriousness of the assault perpetrated by Defendant Blatt;

   g. failing to properly supervise and/or discipline their employees; and

   h. failing to adequately and properly train their employees regarding sexual misconduct.

80. The Company Defendants had a policy to independently investigate sexual assault/harassment, explicitly and/or implicitly represented to Plaintiff.

81. The Company Defendants made these explicit and implied representations knowing that they were false and/or having reason to believe that they were false, and with the expectation that they would be relied upon by female employees who decided to work at for The Company Defendants.

82. The Company Defendants did not have in place adequate, reasonable, and necessary rules, regulations, policies, and procedures with respect to the removal and/or supervision of individuals in its employ or service who were suspected of being sexual predators.

83. The Company Defendants failed to reasonably supervise and/or monitor individuals who it knew, or should have known, were sexual predators in their service and employ.

84. The Company Defendants further breached their duty of care to Plaintiff by failing to protect the Plaintiff from foreseeable harm from the sexual misconduct of an employee of Defendants.

85. The Company Defendants ratified the improper touching and harassment committed by Defendant Blatt by continuing to employ him and allowing him to be in charge of female employees including Plaintiff, after having actual knowledge that Defendant Blatt had improperly touched and harassed Plaintiff.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1      86.    Plaintiff is informed and believes and thereon alleges that she will

2  continue to suffer extreme mental, physical, and pain and suffering in the future as a

3  result of the injuries alleged herein.

**SECOND CAUSE OF ACTION**

**(AGAINST ALL DEFENDANTS)**

**Intentional Infliction of Emotional Distress**

7      87.    Plaintiff incorporates herein by reference, as though set forth in full, all

8  preceding Paragraphs of this Complaint.

9      88.    As described above, without Plaintiff's consent, the Company

10  Defendant' employee and CEO Defendant Blatt engaged in unlawful, sexual

11  misconduct and harassment against Plaintiff.

12      89.    Defendant Blatt's sexual misconduct conduct was outrageous and he

13  acted with reckless disregard for the probability that Plaintiff would suffer emotional

14  distress as a result of his actions.

15      90.    The Company Defendants allowed, adopted, approved, aided, abetted,

16  and ratified the behavior of the Defendant Blatt by allowing him to continue to have

17  female employees including Plaintiff report to him knowing that he had a history of

18  sexual misconduct, including improperly touching and harassing female employees.

19      91.    The Company Defendants employed defendant Blatt.  The Company

20  Defendants failed to adequately and promptly investigate and discipline Defendant

21  Blatt.  By allowing Defendant Blatt to continue as the CEO after each of the

22  aforementioned incidents and failing to adequately and promptly investigate and

23  discipline him, Defendants approved, aided and abetted, adopted, and ratified

24  Defendant Blatt's sexual misconduct.

25      92.    Plaintiff is informed and believes and thereon alleges that she will

26  continue to suffer extreme mental, physical, and pain and suffering in the future as a

27  result of the injuries alleged herein.

28

1    93.    As a further proximate result, Plaintiff has been damaged in that she has

2    been required to expend money and incur obligations for medical services, drugs, and

3    sundries reasonably required in the treatment and relief of the injuries alleged

4    according to proof.  As a further proximate result, Plaintiff will continue to incur

5    medical and related expenses.

6    94.    The acts of Company Defendants alleged above were willful, wanton,

7    malicious, oppressive, fraudulent, despicable, and outrageous and justify the

8    awarding of exemplary and punitive damages.

9    ### THIRD CAUSE OF ACTION

10   ### (AGAINST DEFENDANT BLATT)

11   **Sexual Battery**

12   95.    Plaintiff incorporates herein by reference, as though set forth in full, all

13   preceding Paragraphs of this Complaint.

14   96.    As described above, Defendant Blatt, without Plaintiff's consent,

15   engaged in sexual misconduct, including sexual assault, against Plaintiff, all with the

16   intent of sexual arousal in violation of Civil Code § 1708.5 and Penal Code §

17   243.4(e)(1).

18   97.    Plaintiff is informed and believes and thereon alleges that she will

19   continue to suffer extreme mental, physical, and pain and suffering in the future as a

20   result of the injuries alleged herein.

21   98.    The acts of Defendant Blatt alleged above were willful, wanton,

22   malicious, oppressive, fraudulent, despicable, and outrageous and justify the

23   awarding of exemplary and punitive damages.

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## FOURTH CAUSE OF ACTION

## (AGAINST DEFENDANT BLATT)

### Gender Violence

### Violation of California Civil Code § 52.4

99.    Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

100.   As described above, Defendant Blatt committed gender violence on Plaintiff, which constituted criminal offenses under California law, including Penal Code § 243.4, sexual battery, which includes the use, attempted use, or threatened use of physical force against a person.

101.   These crimes are at least in part based on the gender of Plaintiff.

102.   Defendant Blatt caused a physical intrusion or a physical invasion of a sexual nature under coercive conditions to Plaintiff's person in that Plaintiff was improperly touched by Defendant Blatt, all without Plaintiff's consent.

103.   The acts of violence as alleged above were directed at Plaintiff because she is a woman.  These acts were intended to humiliate and degrade Plaintiff because she is a woman.  These acts robbed Plaintiff of her dignity.

104.   Plaintiff is informed and believes and thereon alleges that she will continue to suffer extreme mental, physical, and pain and suffering in the future as a result of the injuries alleged herein.

105.   Defendant Blatt's aforementioned conduct was accomplished intentionally and/or recklessly with conscious disregard for Plaintiff's health, safety, privacy, freedom, and human dignity.  The aforementioned conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and should be regarded as despicable, atrocious, and utterly intolerable in a civilized community.  The acts of Defendant Blatt alleged above were willful,

1  wanton, malicious, oppressive, fraudulent, despicable, and outrageous and justify the

2  awarding of exemplary and punitive damages.

3      106.   Plaintiff has also been required to expend attorney fees to pursue their

4  rights under Civil Code § 52.4, and request that she be awarded all attorney fees and

5  costs reasonably required to pursue her claims pursuant to Civil Code § 52.4.

6                    **FIFTH CAUSE OF ACTION**

7                    **(AGAINST ALL DEFENDANTS)**

8          **Freedom from Violence Pursuant to The Ralph Act**

9          **Violation of California Civil Code §§ 51.7 and 52**

10     107.   Plaintiff incorporates herein by reference, as though set forth in full, all

11 preceding Paragraphs of this Complaint.

12     108.   Defendants subjected, and/or aided and abetted in the subjection of

13 Plaintiff to violence based on her sex, causing physical and psychological injuries to

14 her.  A motivating reason for their conduct was Plaintiff's sex.

15     109.   Plaintiff is informed and believes and thereon alleges that she will

16 continue to suffer extreme mental, physical, and pain and suffering in the future as a

17 result of the injuries alleged herein.

18     110.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

19     111.   As a result of the aforementioned conduct, Plaintiff is entitled to a

20 $25,000.00 penalty and/or punitive damages for Defendants' conduct in violation of

21 Civil Code § 51.7, as well as attorney's fees and costs pursuant to Civil Code § 52.

22     112.   The aforementioned conduct was accomplished intentionally and/or

23 recklessly with conscious disregard for said Plaintiff's health, safety, privacy,

24 freedom, and human dignity.  Defendants' aforementioned conduct was so

25 outrageous in character and so extreme in degree as to go beyond all possible bounds

26 of decency, and should be regarded as despicable, atrocious, and utterly intolerable in

27 a civilized community.  The acts of Defendants alleged above were willful, wanton,

28

1  malicious, oppressive, fraudulent, despicable, and outrageous and justify the

2  awarding of exemplary and punitive damages.

3                          **SIXTH CAUSE OF ACTION**

4                          **(AGAINST ALL DEFENDANTS)**

5                          **Negligent Misrepresentation**

6      113.   Plaintiff incorporates herein by reference, as though set forth in full, all

7  preceding Paragraphs of this Complaint.

8      114.   All Defendants negligently misrepresented material facts to Plaintiff,

9  namely that Defendants' would conduct a thorough, prompt, and impartial

10 investigation into Defendant Blatt's sexual misconduct and harassment and that she

11 would not suffer any retaliation by Defendants.

12     115.   Defendants negligently misrepresented material facts to Plaintiff,

13 namely that their policies and protocol created an environment where sexual assault

14 is not and will not be tolerated.

15     116.   Defendants made these misrepresentations under circumstances and at a

16 time when they knew or should have known of the falsity of these representations.

17     117.   Defendants made these representations with a reckless disregard for the

18 truth or falsity of such statements and/or with an intent to induce Plaintiff to act on

19 the representations, which, in turn, exposed Plaintiff to harm.

20     118.   Plaintiff's justifiable reliance on Defendants' misrepresentations resulted

21 directly in injury to Plaintiff as described above and such injuries and damages were

22 legally caused by the justifiable reliance upon Defendants' misrepresentations.

23     119.   Plaintiff is therefore entitled to any and all damages resulting from

24 Defendants' negligent misrepresentations that are necessary to make Plaintiff whole,

25 including, but not limited to, all damages, fees, and costs.

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## SEVENTH CAUSE OF ACTION

## (AGAINST DEFENDANTS IAC AND MATCH)

### Wrongful Termination in Violation of Public Policy

120.   Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

121.   California law recognizes public policies that employees should be free from termination for reporting illegal activities, refusing to engage in illegal activities and for reporting sexual harassment.  These public policies are embodied in Labor Code §1102.5(b).

122.   Plaintiff was at all relevant times employed by the Company Defendants.  The Company Defendants terminated Plaintiff, in violation of public policy embodied in Labor Code §1102.5(b) and Article I, Section 8, of the California Constitution, for reporting illegal activities and in retaliation for making a good faith complaint about sexual harassment and assault.

123.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

124.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

125.   Plaintiff is informed and believes, and thereupon alleges that Defendants' actions were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendants' managing agents and/or ratified by Defendants.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

**EIGHT CAUSE OF ACTION**

**(AGAINST DEFENDANTS IAC AND MATCH)**

**Retaliation for Engaging in Protected Activity**

126.   Plaintiff incorporates herein by reference, as though set forth in full, all preceding Paragraphs of this Complaint.

127.   California law recognizes public policies that employees should be free from retaliation at the workplace for reporting illegal activities, refusing to engage in illegal activities and for reporting sexual harassment.  These public policies are embodied in Government Code § 12940(h).

128.   Defendants terminated Plaintiff, in retaliation for reporting illegal activities and in retaliation for making a good faith complaint about sexual harassment and assault.  Defendants' conduct, therefore, violated the public policies that are embodied in Government Code § 12940(h) and Article I, Section 8, of the California Constitution.

129.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

130.   As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

131.   Plaintiff is informed and believes, and thereupon alleges that Defendants' actions were taken with malice, oppression, fraud, and/or willful and conscious disregard of Plaintiff's rights, and were carried out by Defendants' managing agents and/or ratified by Defendants.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## VI.   RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendants and, as appropriate to each cause of action alleged and as appropriate to the standing of Plaintiff, as follows:

1.   compensatory damages, including but not limited to, pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial;

2.   economic damages in the form of medical expenses, out of pocket expenses, lost earnings and earning capacity, and other economic damages in an amount to be determine at trial;

3.   an award of attorneys' fees and costs;

4.   prejudgment interest;

5.   post-judgment interest;

6.   punitive or exemplary damages according to proof; and

7.   for such other and further relief as this Court may deem just and proper.

## VII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all of her claims.

Dated:  August 5, 2019

By:  *Elizabeth Graham*

M. Elizabeth Graham, CA 143085
Paige Alderson
**GRANT & EISENHOFER P.A.**
101 California Street, Suite 2710
San Francisco, California  94111
Phone:  (415) 365-9585
Fax:  (415) 365-9650
Email:  egraham@gelaw.com
Email:  palderson@gelaw.com

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL