1  DEBORAH L. STEIN (SBN 224570)
     DStein@gibsondunn.com
2  MICHAEL H. DORE (SBN 227442)
     MDore@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
4  Los Angeles, CA 90071-3197
   Telephone:   (213) 229-7164
5  Facsimile:   (213) 229-6164

6  ORIN SNYDER (*pro hac vice* application forthcoming)
     OSnyder@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
8  New York, NY 10166-0193
   Telephone: (212) 351-2400
9  Facsimile: (212) 351-6335

10 GRETA B. WILLIAMS (SBN 267695)
     GBWilliams@gibsondunn.com
11 GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.
12 Washington, D.C. 20036-5306
   Telephone: (202) 887-3745
13 Facsimile: (202) 530-4230

14 Attorneys for Defendants Rosette Pambakian
   and Sean Rad
15

16             UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18

   GREG BLATT,                          Case No. 2:19-CV-07046-MWF-FFM
19
                                        Hon. Michael W. Fitzgerald
20              Plaintiff,
                                        **SUPPLEMENTAL REQUEST FOR**
21        v.                            **JUDICIAL NOTICE IN SUPPORT**
                                        **OF DEFENDANTS' SPECIAL**
22 ROSETTE PAMBAKIAN and SEAN           **MOTION TO STRIKE**
   RAD; and DOES 1-10, inclusive,       **PLAINTIFF'S FIRST AMENDED**
23                                       **COMPLAINT**
              Defendants.
24                                       Hearing Date:   November 4, 2019
25                                       Hearing Time:   10:00 a.m.
                                         Courtroom:      5A
26

27

28

1

## SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE

2   When evaluating a motion to dismiss or strike allegations in a complaint, a

3   court "must consider the complaint in its entirety, as well as other sources courts

4   ordinarily examine . . . [including] documents incorporated into the complaint by

5   reference, and matters of which a court may take judicial notice." *See Tellabs, Inc.*

6   *v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Pursuant to Federal

7   Rule of Evidence 201, Defendants Rosette Pambakian and Sean Rad (together,

8   "Defendants") hereby respectfully request that the Court take judicial notice of the

9   following exhibit, a true and correct copy of which is attached hereto:

10

11

| Exhibit | Description |
|---------|-------------|
| C | Excerpts of Certified Reporter's Transcript of September 5, 2019 hearing held in *Rad, et al. v. IAC, et al.*, Case No. 654038/2018 (N.Y. Sup. Ct.) |

12

13

14

15

**Exhibit C Is A Judicially Noticeable Document**

16   A court may take judicial notice of any and all relevant facts that are

17   "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  This includes facts that

18   are "generally known within the trial court's territorial jurisdiction," and facts that

19   "can be accurately and readily determined from sources whose accuracy cannot

20   reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  Indeed, a court "*must* take

21   judicial notice if a party requests it and the court is supplied with the necessary

22   information."  Fed. R. Evid. 201(c)(2) (emphasis added).

23   It is well-established that courts "may take notice of proceedings in other

24   courts, both within and without the federal judicial system, if those proceedings

25   have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria*

26   *Citizens Council v. Borneo, Inc.*, 971 F. 2d 244, 248 (9th Cir. 1992) (citing *St. Louis*

27   *Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)); *see also*

28

1

Gibson, Dunn &
Crutcher LLP

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking "judicial notice of court filings and other matters of public record"). Accordingly, courts "routinely" take judicial notice of hearing transcripts from other court proceedings. *Arrington v. City of Los Angeles*, 2017 WL 10543403, at *7 (C.D. Cal. June 30, 2017) (citing *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc*., 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012)); *see also, e.g.*, *Vazquez v. Jan-Pro Franchising Int'l, Inc*., 2019 WL 4648399, at *4 (9th Cir. Sept. 24, 2019) (granting motion to take judicial notice of hearing transcript in related proceeding).

**Exhibit C** is a true and correct copy of excerpts of a certified reporter's transcript of a September 5, 2019 hearing that took place before Justice Saliann Scarpulla in New York Supreme Court in the related matter of *Rad, et al. v. IAC, et al*. As discussed in the concurrently filed Memorandum of Points and Authorities in Further Support of Defendants' Special Motion to Strike, Plaintiff has argued that "the conduct that provoked [Defendants' allegedly defamatory] statements in the first place" included an allegedly "improper litigation funding agreement." *See* Dkt. 23 at 17. Exhibit C includes discussion between Justice Scarpulla and the parties to that case regarding that agreement, as well as Plaintiff's defamation allegations in this action.

Accordingly, pursuant to Fed. R. Evid. 201(b), in ruling on Defendants' Special Motion to Strike, this Court can and should take judicial notice of this certified reporter's hearing transcript, and it "state[s] what [it] state[s]." *Warwick v. Bank of N.Y. Mellon*, 2016 WL 2997166, at *12 (C.D. Cal. May 23, 2016).

*       *       *

For all of the foregoing reasons, Defendants respectfully request that the Court take judicial notice of and consider Exhibit C, attached hereto, when ruling on Defendants' Special Motion to Strike.

1

Dated:  October 21, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Deborah L. Stein*
Deborah L. Stein

*Attorneys for Defendants Rosette*
*Pambakian and Sean Rad*

3

REQUEST FOR JUDICIAL NOTICE IN FURTHER SUPPORT OF DEFENDANTS'
SPECIAL MOTION TO STRIKE—CASE NO. 2:19-CV-07046-MWF-FFM

# EXHIBIT C

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK  :  CIVIL TERM  :  Part 39
 2   ---------------------------------------------x
     SEAN RAD, JONATHAN BADEEN,
 3   PAUL CAFARDO, GARETH JOHNSON,
     JAMES KIM, ALEXA MATEEN,
 4   JUSTIN MATEEN, JOSHUA METZ,
     RYAN OGLE, and ROSETTE PAMBAKIAN,
 5                                  Index:  654038/2018
                              Plaintiffs,
 6
          -against-
 7
     IAC/INTERACTIVECORP and
 8   MATCH GROUP, INC.,
 9                              Defendants.
     ---------------------------------------------x
10                   60 Centre Street
                     New York, New York 10007
11                   September 5, 2019

12   B E F O R E:  HONORABLE SALIANN SCARPULLA, Supreme Court Justice

13   A P P E A R A N C E S:

14        GIBSON, DUNN & CRUTCHER, LLP
          attorneys for the Plaintiffs
15        200 Park Avenue
          New York, New York 10166
16        BY:  MATTHEW BENJAMIN, ESQ.
               ORIN SNYDER, ESQ.
17             LAURA KATHRYN O'BOYLE, ESQ.
               LAURA RAPOSO, ESQ.
18

19        WACHTELL, LIPTON, ROSEN & KATZ
          attorneys for the Defendants
20        51 West 52nd Street
          New York, New York 10019
21        BY:  MARC WOLINSKY, ESQ.
               STEVE DiPRIMA, ESQ.
22             CARRIE REILLY, ESQ.
               NATE CULLERTON, ESQ.
23             ANEIL KOVVALI, ESQ.

24
                    Michael Ranita
25                Senior Court Reporter
```

005

Proceedings

1        THE COURT:  Let's go on the record.

2        I have before me two motions.  One is to -- with

3   respect to the sealing of the Litigation Funding Agreement.

4   And the second motion is to dismiss the case for violations

5   of the Rules of Professional Responsibility with respect to

6   the Litigation Funding Agreement, which, of course, I have

7   tried desperately not to make the centerpiece of this case,

8   but now it is.  So we are that.

9        What I want to address first is the motion to --

10  the sealing motion, because I thought that -- I think, when

11  I read the papers, it was the defendants' position that they

12  could not discuss the Litigation Funding Agreement in any

13  context; that was never my intent.  So maybe I need to be

14  clear.  Maybe I need to clarify my former order, my order,

15  so that I make it clear of what we are talking about.

16       THE COURT REPORTER:  I'm sorry, can I just get your

17  name so I know who is speaking on the record.

18       MR. WOLINSKY:  Mark Wolinsky for IAC and Match.

19       Frankly, we took the order, and in excess of

20  caution, perhaps, we redacted huge portions of the material

21  and a huge stack of documents.

22       We understood your Honor didn't want -- obviously

23  the core of the litigation funding motion is not about

24  litigation funding.  I know we've disagreed about that.  It

25  is about the payments to the witnesses.  We would like to --

Proceedings

1          THE COURT:  Which we'll deal with that in a moment.

2     But when we were talking about whether to seal the

3     Litigation Funding Agreement, there was an argument made

4     that I thought was a good argument, that this is a

5     competitive industry, I would think that the defendants --

6     that the litigation funder and plaintiffs did not want to --

7     competitors to know what the percentages were.  And I

8     thought that that was fine.  I had no problem with saying,

9     okay, you don't have to do that.  But it was never my intent

10    that you couldn't discuss the litigation agreement, funding

11    agreement, or say that people are getting paid thereunder.

12    That has nothing to do with that.  That reveals nothing

13    about the competitiveness, the competitive terms of the

14    agreement.

15          MR. WOLINSKY:  Your Honor, with that clarification

16    I think our motion is resolved.

17          THE COURT:  Well, so --

18          MS. O'BOYLE:  Your Honor, can we be heard briefly

19    on that point?

20          THE COURT:  Sure.

21          MS. O'BOYLE:  Just so we could have clarification

22    about what can be discussed and what can't be discussed.

23          THE COURT REPORTER:  I'm sorry, can I just get your

24    name so I know who is speaking on the record.

25          MS. O'BOYLE:  I'm sorry.  Laura O'Boyle for

007

Proceedings

1          (Whereupon, a demonstrative aid was shown on the

2     screen.)

3          MR. WOLINSKY:  Let me talk about Ms. Pambakian for

4     a moment.  She is -- we think it's a sideshow, but

5     nonetheless, she is a centerpiece of this lawsuit.  It says

6     "December 2016 holiday party in Los Angeles.  Mr. Blatt, who

7     has been the CEO of Tinder, sexually -- groped and sexually

8     harassed Rosette Pambakian."

9          (Whereupon, a demonstrative aid was shown on the

10    screen.)

11         MR. WOLINSKY:  And from that, the plaintiffs say,

12    "Upon information and belief, the defendants covered up

13    Blatt's misconduct, in part because it was essential to the

14    execution of defendant's scheme to deprive the Tinder

15    plaintiffs of their rights as option holders."

16         So there was a cover up as part of a scheme to

17    screw their clients.  So she is in the center of this

18    lawsuit even though we think it's a sideshow.  Mr. Kim is

19    the center of this case.  "And they", the defendants,

20    "bullied and threatened to fire Tinder executives, including

21    plaintiff James Kim, Tinder's current vice present for

22    finance, to stop them from telling the truth.  On this

23    basis, defendants manufactured a $3 billion valuation."

24         So we have two witnesses who not parties in this

25    case.  They were parties for 17 days.  They still have not

Proceedings

1   filed a lawsuit anyplace alleging violation of their rights

2   as option holders.  So they are, today, witnesses.

3         THE COURT:  Well, let me ask you this:  Do you

4   disagree or do you agree with their position that they

5   didn't know that there was an arbitration agreement in their

6   employment contract until you pulled out the latest one and

7   showed it to me, because it seems a lot less nefarious if

8   they sued and then go to them and say you've got to

9   arbitrate, and then they withdraw.  And don't ask me to

10  decide, which I'm grateful for, whether or not they have to

11  arbitrate.

12        MR. WOLINSKY:  Your Honor, I'll accept as true that

13  they didn't know at the time.  I'll accept that as true.

14        THE COURT:  So they are not plaintiffs anymore.

15        MR. WOLINSKY:  They are not plaintiffs anymore.

16        THE COURT:  They were at the time the Litigation

17  Funding Agreement was signed; correct?

18        MR. WOLINSKY:  Yes.  The litigation agreement was

19  signed four days before the lawsuit was filed.  So their

20  testimony was locked in at the time the Litigation Funding

21  Agreement was signed.

22        Your Honor, there's really two things baked into

23  the question.  One is, I use the phrase "original sin."  Was

24  the Litigation Funding Agreement ab initio improper?  And I

25  believe it was.  Because the amount of payments being made

**009**

Proceedings

1    individual -- who was one of the group of individuals

2    responsible for preparing those projections?  Mr. Kim.  What

3    did Mr. Kim say at the time about these projections?

4         (Whereupon, a demonstrative aid was shown on the

5    screen.)

6         MR. WOLINSKY:  This is a text messaging interchange

7    to -- between Mr. Kim and Drew Williams, May 25th, 2017,

8    just before the projection an going to the banks.  These are

9    two of the authors of the projections.

10        "I know it's all clean, but I keep wondering what

11   they could finds in the model?"

12        Mr. Kim responds, "I know, and knowing Sean."

13        So "Sean" is Sean Rad.  So when he says, "I know

14   it's all clean", he is saying I know the model is all clean

15   "and I keep wondering what Sean is going to find in them."

16        And then Kim writes, "I hope he doesn't go

17   nuclear."

18        And then Kim writes, "If he does, I'm just quitting

19   and you'll be holding the bag, lol."

20        So the allegation in the complaint is that everyone

21   was afraid of Mr. Black, and he is a bully.  And here, what

22   Mr. Kim is saying at the time, at the time, is that the

23   projections are clean and he is worried about what Mr. Rad

24   is going to say.

25        THE COURT:  Well, no, he didn't say that, right?

**010**

Proceedings

1     Somebody else said that, Mr. Williams --

2          MR. WOLINSKY:  He says, "I know."

3          THE COURT:  "I know."  Okay, but I'm not going to

4     -- I mean who knows what that means.

5          MR. WOLINSKY:  Now let's talk about Ms. Pambakian.

6          (Whereupon, a demonstrative aid was shown on the

7     screen.)

8          MR. WOLINSKY:  This is a text message --

9          THE COURT:  Okay.  I hear what you are saying.

10    This has to do -- but let me say this, that if you are

11    questioning the veracity of the witnesses, I have no problem

12    with you doing that.  I'm not going to do it now.  And I'm

13    not going to assume that what they say in their complaint is

14    false.  This -- they said what they said.  If you disagree

15    with it, you disagree with it.  If you have information that

16    casts doubt on it, good.  I'm sure they have information

17    that casts doubt on what your clients say.  So at this point

18    in time I'm not going to -- there is no possibility that I'm

19    finding that someone's testimony is irrevocably tainted by

20    this agreement.  So I'm taking that off the table right now.

21    I'm not going to not -- I'm not going to find that.

22         MR. WOLINSKY:  Okay.  I understand that, your

23    Honor.  I just want to be clear, for the record, we have

24    documents that show that what she is saying now is

25    inconsistent with what she was saying then.

**011**

Proceedings

1          THE COURT:  I'm sure there are plenty of people in

2    the same situation alleging the same things as she is who

3    have inconsistent things that they have said in the past.

4    Again, at this point in the litigation, there is no

5    possibility that I am making a veracity finding.  I want to

6    make that clear.  I haven't seen what your clients have

7    said, that there are smoking guns, that there may be a

8    complete and total lie in the past.  All I'm saying to you

9    now is that this is not the time for anybody to make that

10   decision or resolution, and I'm certainly not going to do it

11   with respect to their testimony.

12          MR. WOLINSKY:  Your Honor, then let me just be

13   clear on what I think you can and can do now.  You can look

14   at the payments and conclude truth or false, true or not,

15   that the existence of the payments has created an issue

16   about her testimony as a result of an unethical and improper

17   payment, and because of that, this sideshow about the

18   holiday party and a cover up, that the board of directors

19   supposedly participated in, should be knocked out of the

20   case.

21          THE COURT:  Not happening.  I'm not doing it.  I'm

22   telling you.

23          MR. WOLINSKY:  Your Honor.

24          THE COURT:  There are plenty of things that I could

25   do.  That is the not one of them.  I'm not going to silence

Proceedings

1    someone in that way.  I'm just not doing it.  And I know you

2    know what I mean, so don't ask me again.

3         MR. WOLINSKY:  Very well.  So then you are left

4    with one remedy is available.  Okay?  You can -- and it's

5    not easy, especially if you've taken --

6         THE COURT:  Well, I'm going to ask the plaintiff,

7    why don't they just redo the Litigation Funding Agreement.

8    Cut out those payments and start again.  Let those people do

9    get litigation funding in their arbitration if they want.  I

10   don't know, that to me, seems like the easiest thing, and

11   would avoid this whole problem.

12        MR. WOLINSKY:  Your Honor, it's easy, but it

13   doesn't undue the prejudice to my clients.

14        THE COURT:  What do you think the prejudice is?

15        MR. WOLINSKY:  The prejudice to my client is --

16   let's talk about Mr. Kim.  Mr. Kim, but for these payments,

17   we think he could've been a witness for us.

18        THE COURT:  Ask him.

19        MR. WOLINSKY:  He's corrupted.  He's got his money.

20   He signed his name to a complaint that he then dropped out

21   of.

22        THE COURT:  Again, I'm saying to you that that is

23   not going to rule the day, because if you accept what the

24   plaintiffs say, they didn't know they had an arbitration

25   agreement.  I'm sure most people -- let me say this:  That

Proceedings

1    most people within employment contracts don't read the fine

2    print and find out later on that they have to arbitrate.

3    This is not the first time I've heard that.

4          MR. WOLINSKY:  Most people don't have Gibson Dunn.

5          THE COURT:  Look, you are completely free to trash

6    him with all his inconsistent statements if you think he is

7    a terrible witness and you've got the goods against him.

8    Put him up, cross him.  You can do it, and he will look bad.

9    So there's that prejudice.  I don't think is insurmountable.

10         MR. WOLINSKY:  And we can cross him on litigation

11   funding arrangements.

12         THE COURT:  You could cross him on whatever he did

13   that you think affects his veracity.

14         MR. WOLINSKY:  Including litigation funding?

15         THE COURT:  Let's talk about that separately.

16         MR. WOLINSKY:  Well that's --

17         THE COURT:  Look --

18         MR. WOLINSKY:  -- what we are talking about today.

19         THE COURT:  No.  I mean, I don't know.  I'm

20   thinking about solutions.

21         MR. WOLINSKY:  Yes, okay.  Well, let's talk about

22   Mr. Kim very concretely.  Mr. Kim is on the stand at a

23   trial, assuming whenever that happens, and we say Mr. Kim,

24   let's talk about how you got into this lawsuit.  You got X

25   dollars up front; didn't you?

**014**

Proceedings

1          THE COURT:  Yes, I am not -- let me say this:  I'm

2     not going make a ruling on this today, and I'll tell you why

3     in a minute, but at the end -- and I have to let the other

4     side speak.  You've already been speaking for an hour.  But

5     I'm not opposed to allowing you to cross examine the witness

6     about the financial incentive, or former financial

7     incentive, and let him explain it.  I don't think that

8     that's -- I'm not going to -- I don't find that that

9     prejudice is something that can't be overcome.  So let me

10    hear or let me talk to the plaintiffs.

11         MR. WOLINSKY:  Sure.  Your Honor, just a

12    housekeeping matter.  How are we going to document the

13    unsealing?

14         THE COURT:  There is no unsealing.  It's the same

15    -- I mean --

16         MR. WOLINSKY:  Well, you have an existing order

17    that says -- I don't have it in front of me.

18         THE COURT:  Let me ask plaintiffs, are you clear

19    now about what I want sealed and what I don't want sealed?

20    If you do an amended order that you both agree on, I'm happy

21    to sign it.

22         MR. BENJAMIN:  We would be happy to meet and confer

23    with the other side.  We've never had that opportunity, your

24    Honor.

25         MR. WOLINSKY:  Your Honor --

015

Proceedings

1      to respond to the experts they put in on reply.

2          THE COURT: So you will absolutely have the

3      opportunity to do that in a hearing. And --

4          MR. BENJAMIN: And can introduce additional expert

5      testimony to the extent that would be helpful to the Court?

6          THE COURT: I don't want to make this a trial

7      within a trial, but I'll give everybody the opportunity to

8      put on their case.

9          Again, merely what I suggest you do is go back to

10      the litigation funder and see if you could work something

11      else out to obviate this whole issue.

12          Even if I find that I have an ethical obligation

13      and there is a disciplinary violation, I will not dismiss

14      the case on that ground. And I will find another way to

15      resolve this.

16          MR. BENJAMIN: Okay thank you, your Honor.

17          THE COURT: All right --

18          MR. BENJAMIN: We will certainly --

19          THE COURT: -- so my understanding is the

20      defendants are arguing the motion to dismiss in the

21      Appellate Division next week; correct?

22          MR. WOLINSKY: Yes, on the 10th.

23          THE COURT: So I don't know that I need to do

24      anything until we decide whether or not this case is going

25      forward at all. I feel one hundred percent confident in my

Proceedings

1    decision, but I've had -- the First Department has, more

2    than one time, told me that I'm a hundred percent wrong.  My

3    point is, I don't want you to spend money on this until we

4    see whether or not the case is going forward or not.

5              So what I think we'll do is we will continue --

6    we'll put this issue to the side.  We will continue on our

7    discovery, because I made it clear that no matter what, the

8    case is not going to go away on the Litigation Funding

9    Agreement.

10             And then if, in fact, my decision is stayed, then

11   we'll set a hearing.  We could meet and confer at a

12   conference.  As to the hearing, I don't intend it to be more

13   than one day, max.  And I really mean that most sincerely.

14   A couple of years ago I had a hearing where, I mean, I

15   literally just could not stop the lawyers, and so I don't

16   want that to happen here.  So please, I want to be up front

17   with how long I want this hearing to take place.

18             (Continued on the next page to include the court

19   reporter's certification.)

20

21

22

23

24

25

Proceedings

 1

 2          MR. BENJAMIN:  And we'll certainly give very

 3     serious consideration to your Honor's suggestion.

 4          THE COURT:  Okay.

 5          MR. WOLINSKY:  Thank you.

 6          THE COURT:  Anything else, Counsel?

 7          MR. WOLINSKY:  No.

 8          THE COURT:  Okay.

 9   *     *     *     *     *     *     *     *     *     *     *

10     I, Michael Ranita, a Senior Court Reporter for the State of

11   New York do hereby certify that the foregoing is a true and

12   accurate transcript of the stenographic minutes taken within.

13

14

15                              Michael Ranita
                               Senior Court Reporter
16

17

18

19

20

21

22

23

24

25

**018**